174 P.3d 367

E & J LOUNGE OPERATING COMPA-
NY, INC., a Hawai'i corporation, Ap-
pellant–Appellee/Cross–Appellee,

v.

LIQUOR COMMISSION OF the CITY
AND COUNTY OF HONOLULU, Ap-
pellee–Appellant/Cross–Appellee,

and

H. James Stahl, Tyson J. Thomas, Randi
Thomas, Emily Reed, and Bill Maxwell,
Intervenors–Appellees,     Intervenors–
Cross–Appellants.

No. 27940.

Intermediate Court of Appeals of Hawai'i.

Dec. 24, 2007.

Duane W.H. Pang, deputy corporation
counsel, City and County of Honolulu, on the
briefs, for appellee-appellant/cross-appellee.

Christian P. Porter and David W.H. Chee
(Brooks Tom Porter & Quitiquit), Honolulu,
on the briefs, for appellant-appellee/cross-
appellee.

H. James Stahl, Randi Thomas, Tyson J.
Thomas, Bill Maxwell, and Emily Reed, on
the briefs, intervenors-appellees/intervenors-
cross-appellants pro se.

RECKTENWALD, C.J., and
WATANABE, J.; and NAKAMURA, J.,
Dissenting.

Opinion of the Court by WATANABE, J.

This secondary appeal by Appellant–Ap-
pellee/ Cross–Appellee E & J Lounge Oper-
ating Company, Inc. (E & J) from the denial
of a liquor dispenser general license (liquor
license) raises two issues: (1) whether Appel-
lee–Appellant/Cross–Appellee Liquor Com-
mission of the City and County of Honolulu
(the Commission) was required to hold a
"contested case" hearing in accordance with
Hawaii Revised Statutes (HRS) chapter 91
before deciding whether to approve or deny
E & J's application for a liquor license, and
(2) whether the Circuit Court of the First
Circuit (the circuit court) had jurisdiction to
review the Commission's denial of E & J's
application for a liquor license.

The circuit court[1] concluded that it had jurisdiction over E & J's appeal pursuant to HRS § 91–14 (1993 & Supp.2006)[2] because "[t]he public hearings held before the Commission prior to issuance of a Liquor License are adjudicatory in nature and are therefore contested cases" subject to the procedural requirements for contested cases set forth in HRS chapter 91. The circuit court also held that the Commission violated HRS § 91–11 (1993)[3] in denying E & J's application because although one of the Commissioners

1. The Honorable Eden Elizabeth Hifo presided.

2. Hawaii Revised Statutes (HRS) § 91–14 (1993 & Supp.2006) currently provides, as it did during the proceedings below, in relevant part, as follows:

> Judicial review of contested cases. (a) Any person aggrieved by a final decision and order in a contested case or by a preliminary ruling of the nature that deferral of review pending entry of a subsequent final decision would deprive appellant of adequate relief is entitled to judicial review thereof under this chapter; but nothing in this section shall be deemed to prevent resort to other means of review, redress, relief, or trial de novo, including the right of trial by jury, provided by law. Notwithstanding any other provision of this chapter to the contrary, for the purposes of this section, the term "person aggrieved" shall include an agency that is a party to a contested case proceeding before that agency or another agency.
>
> (b) [Subsection effective until June 30, 2006. For subsection effective July 1, 2006, see below.] Except as otherwise provided herein, proceedings for review shall be instituted in the circuit court within thirty days after the preliminary ruling or within thirty days after service of the certified copy of the final decision and order of the agency pursuant to rule of court except where a statute provides for a direct appeal to the supreme court, which appeal shall be subject to chapter 602, and in such cases the appeal shall be in like manner as an appeal from the circuit court to the supreme court, including payment of the fee prescribed by section 607–5 for filing the notice of appeal (except in cases appealed under sections 11–51 and 40–91). The court in its discretion may permit other interested persons to intervene.
>
> (b) [Subsection effective July 1, 2006. For subsection effective until June 30, 2006, see above.] Except as otherwise provided herein, proceedings for review shall be instituted in the circuit court within thirty days after the preliminary ruling or within thirty days after service of the certified copy of the final decision and order of the agency pursuant to rule of court, except where a statute provides for a direct appeal to the intermediate appellate court, subject to chapter 602. In such cases, the appeal shall be treated in the same manner as an appeal from the circuit court to the intermediate appellate court, including payment of the fee prescribed by section 607–5 for filing the notice of appeal (except in cases appealed under sections 11–51 and 40–91). The court in its discretion may permit other interested persons to intervene.
>
> . . . .
>
> (f) The review shall be conducted by the appropriate court without a jury and shall be confined to the record, except that in the cases where a trial de novo, including trial by jury, is provided by law and also in cases of alleged irregularities in procedure before the agency not shown in the record, testimony thereon may be taken in court. The court shall, upon request by any party, hear oral arguments and receive written briefs.
>
> (g) Upon review of the record the court may affirm the decision of the agency or remand the case with instructions for further proceedings; or it may reverse or modify the decision and order if the substantial rights of the petitioners may have been prejudiced because the administrative findings, conclusions, decisions, or orders are:
> (1) In violation of constitutional or statutory provisions; or
> (2) In excess of the statutory authority or jurisdiction of the agency; or
> (3) Made upon unlawful procedure; or
> (4) Affected by other error of law; or
> (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
> (6) Arbitrary, or capricious, or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
>
> (h) Upon a trial de novo, including a trial by jury as provided by law, the court shall transmit to the agency its decision and order with instructions to comply with the order.

3. HRS § 91–11 (1993) provides as follows:

> Examination of evidence by agency. Whenever in a contested case the officials of the agency who are to render the final decision have not heard and examined all of the evidence, the decision, if adverse to a party to the proceeding other than the agency itself, shall not be made until a proposal for decision containing a statement of reasons and including determination of each issue of fact or law necessary to the proposed decision has been served upon the parties, and an opportunity has been afforded to each party adversely affected to file exceptions and present argument to the officials who are to render the decision, who shall personally consider the whole record or such portions thereof as may be cited by the parties.

who participated in the final decision was not present for the first day of public hearings on the application, the Commission rendered a final decision without first issuing a proposed decision and providing an opportunity for E & J to file exceptions and present arguments on the proposed decision, one of the procedural requirements for a contested case under HRS chapter 91. Additionally, the circuit court concluded that the Commission violated HRS § 281–59(b) (Supp.2006)[4] by failing to "make a ruling on corrections, additions or subtraction of the persons required to be notified of the public hearing[.]" The circuit court thereupon vacated[5] the Commission's decision and remanded the case to the Commission with instructions for further proceedings on remand.

In light of *Singleton v. Liquor Comm'n,* 111 Hawai'i 234, 140 P.3d 1014 (2006), we agree that the circuit court had jurisdiction pursuant to HRS § 91–14 to review the denial of E & J's liquor-license application. However, we conclude that the Commission was required to comply with the more specific "public hearing" procedures set forth in HRS chapter 281, rather than the "contested case" procedures delineated in HRS chapter 91, in deciding whether to grant or deny E & J's liquor-license application. Accordingly, we vacate the circuit court's judgment and remand for further proceedings consistent with this opinion.

## THE RELEVANT STATUTES

### A. *HRS Chapter 281*

HRS chapter 281 provides the statutory framework that governs the operations and procedures of the county liquor commissions in Hawai'i. Pursuant to HRS § 281–17 (Supp.2006), the various commissions are vested with extensive jurisdiction and a broad array of ministerial, policy-making, rule-making, adjudicatory, and imposition-of-penalty powers. HRS § 281–17 states, in relevant part:

> Jurisdiction and powers. (a) *The liquor commission, within its own county, shall have the sole jurisdiction, power, authority, and discretion, subject only to this chapter:*
>
> (1) *To grant, refuse,* suspend, and revoke *any licenses for the* manufacture, importation, and *sale of liquors;*
>
> . . . .
>
> (4) From time to time to make, amend, and repeal such rules, not inconsistent with this chapter, as in the judgment of the commission seem appropriate for carrying out this chapter and for the efficient administration thereof, and the proper conduct of the business of all licensees, including every matter or thing required to be done or which may be done with the approval or consent or by order or under the direction or supervision of or as prescribed by the commission; which rules, when adopted as provided in chapter 91 shall have the force and effect of law;
>
> . . . .

---

**4.** HRS § 281–59(b) (Supp.2006) requires as follows:

> Hearing; rehearing. . . .
>
> . . . .
>
> (b) The liquor commission shall make available to the applicant and any protester for review before the public hearing, the protest list of those persons who filed a protest or objection to the application; provided that the applicant shall not use the protest list to attempt to influence in any way any protester to withdraw the protest or objection. All applicants and protesters may submit corrections, additions, and subtractions to the master list and the protest list at the public hearing. The liquor commission shall rule on proposed corrections, additions, and subtractions and give reasons for the ruling.

**5.** In its April 20, 2006 Findings of Fact, Conclusions of Law, and Decision and Order (Decision), the Circuit Court of the First Circuit (the circuit court) ordered that the June 16, 2005 decision of Appellee–Appellant/Cross–Appellee Liquor Commission of the City and County of Honolulu (the Commission) be "reversed and remanded[.]" The circuit court also set forth instructions for the Commission on remand of the case. Pursuant to Hawai'i Rules of Appellate Procedure (HRAP) Rule 35(e), "the word 'reverse' ends litigation on the merits, and the phrase 'vacate and remand' indicates the litigation continues in the court or agency in accordance with the appellate court's instruction." Applying these definitions, we conclude that the circuit court "vacated[,]" rather than "reversed[,]" the Commission's decision.

(b) *Subject only to this chapter,* the commission or board and each member thereof shall have the same powers respecting the administering of oaths, compelling the attendance of witnesses and the production of documentary evidence, and examining the witnesses as are possessed by a circuit court, except that the commission or board and each member thereof shall not be bound by the strict legal rules of evidence. In addition, the commission or board shall have the power to require the production of, and to examine any books, papers, and records of any licensee which may pertain to the licensee's business under the license or which may pertain to a matter at a hearing before the commission or board or to an investigation by the commission or board.

*The exercise by the commission or board of the power, authority, and discretion vested in it pursuant to this chapter shall be final and shall not be reviewable by or appealable to any court or tribunal,* except as otherwise provided in this chapter or chapter 91.

(Emphases added.) The Commission's broad discretion is further reflected in HRS § 281–59(c) (Supp.2006), which flatly states: "The commission may ... with like discretion ... [g]rant a license to one person in preference to another, without reference to any priority in the order of filing of the applications[.]"

Under the procedures established by HRS chapter 281, no liquor license may be issued by the Commission unless and until a thorough inspection has been conducted of the premises for which a liquor license is sought and the Commission is satisfied that the applicant is fit and will carry on the business in a reputable way. HRS § 281–51 (1993).[6] Obtaining a liquor license involves multiple steps:

(1) The applicant must file an application for a liquor license, verified by oath of the applicant or its officers, that contains the information prescribed by statute and the Commission's rules, HRS § 281–53 (Supp. 2006); [7]

(1) The full name, age, and place of residence of the applicant; if a copartnership, the names, ages, and respective places of residence of all the partners; if a limited liability company, its full name and the names of all its members; if a corporation or joint-stock company, its full name and the names of its officers and directors, and the names of all stockholders owning twenty-five per cent or more of the outstanding capital stock; and if any other association of individuals, the names, ages, and respective places of residence of its officers and the number of its members;

(2) A particular description of the place or premises where the proposed license is to be exercised, so that the exact location and extent thereof may be clearly and definitely determined therefrom;

(3) The class and kind of license applied for; and

(4) Any other matter or information pertinent to the subject matter which may be required by the rules and regulations of the commission.

If any false statement is knowingly made in any application which is verified by oath, the applicant, and in the case of the application being made by a corporation, limited liability company, association, or club, the persons signing the application, shall be guilty of perjury, and shall be subject to the penalties prescribed by law for such offense. If any false statement is knowingly made in any applica-

6. HRS § 281–51 (1993) provides:

Prior inspection. No license shall be issued under this chapter unless and until the liquor commission has caused to be made a thorough inspection of the premises upon which the proposed business is to be conducted and is satisfied as to its fitness and that all other general conditions and proposed methods of operation under the license are such as are suitable for carrying on the business in a reputable way. "In a reputable way" includes among other considerations operating in such a manner that activities within the premises or in such adjacent related outdoor areas such as parking lots or lanais will not create noise in excess of standards contained in state or county noise or vibration codes which intrudes into nearby residential units.

7. HRS § 281–53 (Supp.2006) provides as follows:

Application; penalty for false statements. Every application for a license or for the renewal of a license or for the transfer of a license shall be in writing, signed, and, except for the renewal of a license, verified by the oath of the applicant, or in the case of a corporation or unincorporated association by the proper officer or officers thereof, or if a partnership by a general partner thereof, or if a limited liability company by a member thereof, made before any official authorized by law to administer oaths, and shall be addressed to the liquor commission, and set forth:

(2) The Commission staff conducts a criminal history record check of the applicant, HRS § 281–53.5 (Supp.2006); [8]

(3) The application is referred to an investigator for investigation, HRS § 281–55

tion which is not verified by oath, the person or persons signing the application shall be guilty of a misdemeanor and upon conviction thereof shall be punished as in section 281–102 provided.

8. HRS § 281–53.5 (Supp.2006) provides as follows:

County liquor commissions; criminal history record check. (a) The respective county liquor commissions may request a criminal history record check of an applicant for a liquor license in accordance with section 846–2.7. The criminal history record check, at a minimum, shall require the applicant to disclose whether:

(1) The applicant has been convicted in any jurisdiction of a crime that would tend to indicate the applicant may be unsuited for obtaining a liquor license; and

(2) The judgment of conviction has not been vacated.

For the purpose of this section, the criminal history disclosure made by the applicant may be verified by the liquor commission by means of information obtained through the Hawaii criminal justice data center. The applicant shall provide the Hawaii criminal justice data center with personal identifying information which shall include but not be limited to the applicant's name, social security number, date of birth, and gender. This information shall be secured only for the purpose of conducting the criminal history record check authorized by this section.

(b) The applicant shall submit to the liquor commission:

(1) A statement signed under penalty of law as to whether the applicant has ever been convicted of a crime other than a minor traffic violation;

(2) Written consent to request and obtain criminal history record information for verification; and

(3) Permission to be fingerprinted.

(c) The liquor commission shall obtain criminal history record information through the Hawaii criminal justice data center on the applicant. The information obtained shall be used exclusively for the stated purpose for which it was obtained and shall be subject to applicable federal laws and regulations currently or hereafter in effect.

9. HRS § 281–55 (1993) provides:

Reference to investigator. Upon the filing of any application the administrator of the liquor commission shall indorse thereon the date of filing thereof. If no patent disqualification of the applicant or certain valid objection to the

(1993); [9]

(4) The investigator must file a written report with the Commission that includes the information required by HRS § 281–56 (Supp.2006) [10] and the investigator's recom-

granting of the application is apparent initially and if all requirements relative to the filing of the application appear to have been complied with, the application shall be referred to the investigator for investigation.

10. HRS § 281–56 (Supp.2006) currently provides, as it did when Appellant–Appellee/Cross–Appellee E & J Lounge Operating Company, Inc. (E & J) filed its application for a liquor license, as follows:

Report by investigator. (a) On every application referred to the investigator under section 281–55, the investigator shall report in writing to the liquor commission and, if the application is for a license of any class other than class 7, class 8, or class 9, such report shall show:

(1) A description of the premises intended to become the licensed premises, and the equipment and surrounding conditions including the relationship to surrounding residences which may share a common boundary or a common structure with the premises proposed for licensing;

(2) If the application is made by a person who has held a prior license for the same or any other premises within two years past, a statement as to the manner in which the premises have been operated and the business conducted under the previous license;

(3) The locality of any church, chapel, or school, if any, within a distance of five hundred feet from the nearest point of the premises for which the license is asked to the nearest point of the church, chapel, or school grounds;

(4) The number, position, and distance from the premises, in respect of which a license is applied for, of any other licensed premises of the same class in the neighborhood;

(5) The number of licenses of the same class or kind already issued and being lawfully exercised within the county;

(6) Whether or not in the opinion of the investigator the applicant is a fit and proper person to have a license;

(7) Whether or not the applicant is for any reason disqualified by this chapter from obtaining or exercising a license; and whether or not the applicant has complied with all the requirements of this chapter relative to the making and filing of the applicant's application;

(8) For the next application for a license that was previously denied, refused, or with-

mendation as to the fitness of the license applicant, *id.;*

(5) The Commission may hold a preliminary hearing, with prior notice to persons submitting a written request for notice, after which the Commission may either deny the application or schedule a public hearing on the application, HRS § 281–57(a) (Supp. 2006); [11]

(6) If a public hearing is to be held, public notice of the hearing must be published in the applicable county at the applicant's expense at least once in each of two consecutive weeks, the date of the hearing being not less than forty-five days after the first public notice, which "shall require that all protests or objections against the issuance of the license applied for shall be filed with the administrator of the commission at or before

the time of hearing[,]" HRS § 281–57(b) (Supp.2006); [12]

(7) The applicant must mail notice of the time and place of the public hearing to each of the following: (a) "Not less than two-thirds of the owners and lessees of record of real estate and owners of record of shares in a cooperative apartment or to those individuals on the list of owners as provided by the managing agent or governing body of the shareholders association [ (collectively, neighboring property owners and lessees) ] situated within a distance of five hundred feet from the nearest point of the premises for which the license is asked [ (500–foot radius),]" and not less than three-fourths of the neighboring property owners and lessees situated "within a distance of one hundred feet from the nearest point of the premises for which the license is asked [ (100–foot radius),]" HRS § 281–57(c)(1) (Supp.2006); [13]  (b)

drawn, evidence, to be provided by the applicant, of a substantial change in the circumstances that caused the previous denial, refusal, or withdrawal; and

(9) Any and all other matters and things, which in the judgment of the investigator pertain to or affect the matter of the application, or the issuance or the exercise of the license applied for; provided that when the license application is for premises within a county encompassing a population of 500,000 residents or more, the report shall specify the possible adverse effects the premises, after licensing, may have on the surrounding community.

(b) A copy of the report shall be furnished to the applicant not less than forty-eight hours before any hearing is had upon the application. Upon written request, a copy of the report shall be furnished to any requester.

(c) The applicant and any protester may challenge findings contained in the investigator's report before or at any hearing on the application.

11. HRS § 281–57(a) (Supp.2006) currently provides, as it did when E & J filed its application for a liquor license, as follows:

Preliminary hearing; notice of public hearing. (a) Upon the filing of the investigator's report upon any application the liquor commission may hold a preliminary hearing and upon such preliminary hearing it may deny the application. A notice of preliminary hearing on a previously denied, refused, or withdrawn application shall be given seven days before the preliminary hearing to any person who submitted a written request for notice.

12. HRS § 281–57(b) (Supp.2006) currently provides, as it did when the proceedings below took place, as follows:

Preliminary hearing; notice of public hearing. . . .

(b) If no preliminary hearing is had or if the application is not denied upon a preliminary hearing, the commission shall fix a day for the public hearing of the application (other than an application for an alcohol license or a license in classes 7 to 10 and 13) and shall give public notice of the hearing at least once in each of two consecutive weeks, in the county, the date of the hearing to be not less than forty-five days after the first notice. The notice shall require that all protests or objections against the issuance of the license applied for shall be filed with the administrator of the commission at or before the time of hearing. Before giving the notice the commission shall collect from the applicant the cost of giving the public notice or require a deposit to cover the same.

13. HRS § 281–57(c)(1) (Supp.2006) currently provides, as it did when the proceedings below took place, as follows:

Preliminary hearing; notice of public hearing. . . .

. . . .

(c) Immediately upon the commission's fixing a day for the public hearing of the application, the applicant shall mail a notice setting forth the time and place of the hearing on the application to each of the following:

(1) Not less than two-thirds of the owners and lessees of record of real estate and owners of record of shares in a cooperative apartment or to those individuals on the list of owners as provided by the

"not less than two-thirds of the registered voters residing within, and small businesses [ (registered voters and businesses) ] situated within" the 500–foot radius, and not less than three-fourths of the registered voters and businesses situated within the 100–foot radius, HRS § 281–57(c)(2) (Supp.2006); [14] and (c) the residents, collectively, of each condominium project and cooperative apartment within the 500–foot radius, in care of the manager of the project or apartment, HRS § 281–57(c)(3) (Supp.2006); [15]

(8) Prior to the public hearing and no more than seven days after the mailing of the required notices, the applicant must file with the Commission: (a) an affidavit attesting that the notices of public hearing have been mailed to the required addressees in compliance with the statutory requirements; (b) a master list of the names and addresses of every neighboring owner and lessee, registered voter, business, condominium project, and cooperative apartment within the 500–foot and 100–foot radiuses; and (c) a mailing list of the names and addresses of every neighboring property owner and lessee, registered voter, business, condominium project, and cooperative apartment to whom applicant mailed a notice of public hearing, HRS § 281–57(c); [16]

managing agent or governing body of the shareholders association situated within a distance of five hundred feet from the nearest point of the premises for which the license is asked to the nearest point of such real estate or cooperative apartment; provided that in meeting this requirement, the applicant shall mail a notice to not less than three-fourths of the owners and lessees of record of real estate and owners of record of shares in a cooperative apartment situated within a distance of one hundred feet from the nearest point of the premises for which the license is asked. Notice by mail may be addressed to the last known address of the person concerned or to the address as shown in the last tax return filed by the person or the person's agent or representative[.]

**14.** HRS § 281–57(c)(2) (Supp.2006) states:

Preliminary hearing; notice of public hearing. . . .

. . . .

(c) Immediately upon the commission's fixing a day for the public hearing of the application, the applicant shall mail a notice setting forth the time and place of the hearing on the application to each of the following:

. . . .

(2) In counties with a population of two hundred-fifty thousand or more, not less than two-thirds of the registered voters residing within, and small businesses situated within, a distance of five hundred feet from the nearest point of the premises for which the license is asked; provided that in meeting this requirement, the applicant shall mail notices to not less than three-fourths of the registered voters residing within, and small businesses situated within, a distance of one hundred feet from the nearest point of the premises for which the license is asked. This paragraph shall not apply to any applicant that is a hotel as defined in section 486K–1, a restaurant, or a con-

venience store. A notice sent pursuant to this paragraph shall be addressed to the "occupant" of the residential unit or small business[.]

**15.** HRS § 281–57(c)(3) (Supp.2006) currently provides, as it did when the proceedings below took place, in pertinent part, as follows:

Preliminary hearing; notice of public hearing. . . .

. . . .

(c) Immediately upon the commission's fixing a day for the public hearing of the application, the applicant shall mail a notice setting forth the time and place of the hearing on the application to each of the following:

. . . .

(3) For each condominium project and cooperative apartment within the five hundred-foot area, one notice of the hearing shall be sent by mail addressed "To the Residents, Care of the Manager", followed by the name and address of the condominium or cooperative apartment involved.

**16.** The relevant portion of HRS § 281–57(c) (Supp.2006) provides:

Preliminary hearing; notice of public hearing. . . .

. . . .

(c) Immediately upon the commission's fixing a day for the public hearing of the application, the applicant shall mail a notice setting forth the time and place of the hearing on the application to each of the following:

. . . .

The notices required under this subsection shall be mailed at least forty-five days prior to the date set for the hearing. No promotional information shall be allowed on, or accompany the notice. Before the hearing, and within seven days of having mailed the notices, the applicant shall file with the commission an affidavit that the notices have been mailed in compli-

(9) Letters supporting or protesting the grant or denial of the application are filed with the Commission, *see* HRS § 281–57(b) (Supp.2006); [17]

(10) The Commission holds a public hearing pursuant to HRS §§ 281–52 (1993) [18] and 281–57(b) to consider the application and any protests or objections to the application, hear the parties in interest, accept written or oral testimony for or against the application, and decide whether to grant or refuse the application; however, if a majority of the neighboring property owners and lessees within the 500–foot radius or a majority of the registered voters within the 500–foot radius "have duly filed or caused to be filed their protests against the granting of the license, or if there appears any other disqualification under [HRS chapter 281], the application shall be refused[,]" HRS § 281–59(a) (Supp. 2006); [19] and

> ance with this subsection. In addition to the affidavit (which shall be made available within the same seven-day period with proof of having mailed the notices), the applicant shall include both a master list of one hundred per cent of addressees and addresses required by paragraphs (1), (2), and (3), and another mailing list consisting of the portion of addressees and their respective addresses who were mailed the notice purposely needed to meet the requirements of paragraphs (1), (2), and (3). The affidavit, master list, and mailing list shall be made available within seven days (of the mailing of the notice by the applicant) by the commission for public review upon request. For purposes of this section "master list" means every owner and lessee who would otherwise be required to receive notice of the public hearing according to the requirement of paragraphs (1), (2), and (3), even if they were not actually included in the two-third [sic] or three-fourths requirement (as the case may be) of paragraph (1) or (2), and every condominium project and cooperative apartment qualifying in paragraph (3). The commission shall cancel the hearing if not receiving the affidavit prior to the hearing or if discovering that the affidavit is false.

**17.** HRS § 281–57(b) (Supp.2006) provides as follows:

> Preliminary hearing; notice of public hearing. . . .
> (b) If no preliminary hearing is had or if the application is not denied upon a preliminary hearing, the commission shall fix a day for the public hearing of the application (other than an application for an alcohol license or a license in classes 7 to 10 and 13) and shall give public notice of the hearing at least once in each of two consecutive weeks, in the county, the date of the hearing to be not less than forty-five days after the first notice. The notice shall require that all protests or objections against the issuance of the license applied for shall be filed with the administrator of the commission at or before the time of hearing. Before giving the notice the commission shall collect from the applicant the cost of giving the public notice or require a deposit to cover the same.

**18.** HRS § 281–52 (1993) states, in relevant part, as follows:

> Public hearing. No license shall be granted except after a public hearing by the liquor commission upon notice as prescribed in this chapter; provided that section 281–57 to 281–60 shall not apply to the holder of a wholesale general license, or a retail general license, or a dispenser's general license, who applies for a different kind of license within the class of the holder's existing license, on the same premises, or to the holder of a cabaret license who applies for a dispenser license of any kind, on the same premises, or to the holder of a dispenser's beer and wine license who applies for dispenser's beer license, on the same premises, or to a licensee whose licensed premises have been demolished and replaced by another building on the same premises and who applies for the same or lesser kind of the same class of liquor license previously held by the licensee on said premises.

**19.** HRS § 281–59(a) (Supp.2006) provides as follows:

> Hearing; rehearing. (a) Upon the day of hearing, or any adjournment thereof, the liquor commission shall consider the application and any protests and objections to the granting thereof, and hear the parties in interest. The liquor commission shall accept all written or oral testimony for or against the application whether the application is denied, refused, or withdrawn. Within fifteen days after the hearing, or within thirty days thereafter if in its discretion the commission extends the fifteen days to thirty days, and gives public notice of same, the commission shall give its decision granting or refusing the application; provided that if a majority of the:
> (1) Registered voters for the area within five hundred feet of the nearest point of the premises for which the license is asked; or
> (2) Owners and lessees of record of real estate and owners of record of shares in a cooperative apartment within five hundred feet of the nearest point of the premises for which the license is asked;
> have duly filed or caused to be filed their protests against the granting of the license, or if there appears any other disqualification under this chapter, the application shall be re-

(11) A person affected by the Commission's decision may file for a rehearing of the application. HRS § 281–59(c).[20]

## B. HRS Chapter 91

The Hawaii Administrative Procedures Act (HAPA), HRS chapter 91 (1993 & Supp. 2006),[21] establishes procedures that an "agency" must follow in conducting contested-case hearings or adopting, amending, or repealing rules. For purposes of HRS chapter 91, the term "[a]gency" is defined as "each state or county board, commission, department, or officer authorized by law to make rules or to adjudicate contested cases, except those in the legislative or judicial branches." HRS § 91–1(1) (1993). The term "[p]arty" is defined as "each person or agency named or admitted as a party, or properly seeking and entitled as of right to be admitted as a party, in any court or agency proceeding." HRS § 91–1(3) (1993). Additionally, HRS § 91–1 (1993)[22] includes the following definitions:

(5) "Contested case" means a proceeding in which the legal rights, duties, or privileges of specific parties are required by law to be determined after an opportunity for agency hearing.

(6) "Agency hearing" refers only to such hearing held by an agency immediately prior to a judicial review of a contested case as provided in section 91–14.

---

**20.** HRS § 281–59(c) (Supp.2006) provides, in pertinent part, as follows:

Hearing; rehearing. ...

....

(c) The commission may also, with like discretion:

(1) Grant a license to one person in preference to another, without reference to any priority in the order of filing of the applications; and

(2) Of its own motion, or on the suggestion of any member, or of the investigator take notice of any matter or thing which in the opinion of a majority of its members would be a sufficient objection to the granting of a license; but in such case if the objection is one to which the applicant should be given a reasonable time to answer, a continuance may be granted in the discretion of the commission;

provided that in any case where any person affected by such decision petitions the commission for a rehearing of the application and on oath alleges facts and grounds for consideration which were not formerly presented or considered, or any other matter of fact which in the judgment of the commission seems sufficient to warrant a rehearing, such rehearing may be granted by the commission in its discretion upon the publication of notice· of rehearing at least seven days before the date of the rehearing. When a rehearing is allowed notice shall be given to the applicant and to the applicant's opponents, by publication or otherwise as the commission shall direct.

**21.** The Hawaii Administrative Procedure Act (HAPA), codified at HRS chapter 91, was adopted by the Hawai'i Legislature in 1961, pursuant to 1961 Haw. Sess. L. Act 103, §§ 1–21 at 85–91. The structure of HAPA was based on the Revised 1961 Model State Administrative Procedure Act (1961 Model APA), which was developed at the meeting of the National Conference of Commissioners on Uniform State Laws (USL Commission) on August 17–22, 1959. Hse. Stand. Comm. Rep. No. 8 on Hse. Bill No. 5, in 1961 House Journal, at 654. However, there are differences between provisions in the HAPA and the 1961 Model APA that reflect "[a]mendments and corrections ... made in the light of practices and procedures presently followed by the various agencies of the state and counties and also from comments and suggestions of witnesses who have appeared before [the House Judiciary] Committee." *Id.* We observe, for example, that the 1961 Model APA defines "contested case" as "a proceeding, including but not restricted to ratemaking, [price fixing], and *licensing*, in which the legal rights, duties, or privileges of a party are required by law to be determined by an agency after an opportunity for hearing[.]" The 1961 Model APA also includes definitions for "license" and "licensing" which are absent from the HAPA. In 1981, the USL Commission completely revised the 1961 Model APA to address the enormous growth in size and complexity of state administrative law since 1961. *See* 15 Uniform Law Annotated, *Prefatory Note to State Administrative Procedure Act (1981)* at 2 (2000). The 1981 revisions have not been adopted by the Hawai'i Legislature.

**22.** HRS § 91–1 (1993) includes definitions for the following six terms: agency, persons, party, rule, contested case, and agency hearing.

---

fused. Otherwise, the commission may in its discretion grant or refuse the same.

For purposes of defining "a majority of the owners and lessees of record of real estate and owners of record of shares in a cooperative apartment", each property counts only once. A protest submitted by the majority of the co-owners or the majority of the co-lessees of a property shall constitute a protest by all the owners or lessees of record of that property. Owners or lessees who own more than one property may count each property.

The procedural requirements applicable to "contested cases" include the following sections of HRS chapter 91:

§ 91–9 Contested cases; notice; hearing; records. (a) Subject to section 91–8.5, in any contested case, all parties shall be afforded an opportunity for hearing after reasonable notice.

(b) The notice shall include a statement of:

(1) The date, time, place, and nature of hearing;

(2) The legal authority under which the hearing is to be held;

(3) The particular sections of the statutes and rules involved;

(4) An explicit statement in plain language of the issues involved and the facts alleged by the agency in support thereof; provided that if the agency is unable to state such issues and facts in detail at the time the notice is served, the initial notice may be limited to a statement of the issues involved, and thereafter upon application a bill of particulars shall be furnished;

(5) The fact that any party may retain counsel if the party so desires and the fact that an individual may appear on the individual's own behalf, or a member of a partnership may represent the partnership, or an officer or authorized employee of a corporation or trust or association may represent the corporation, trust, or association.

(c) Opportunities shall be afforded all parties to present evidence and argument on all issues involved.

(d) Any procedure in a contested case may be modified or waived by stipulation of the parties and informal disposition may be made of any contested case by stipulation, agreed settlement, consent order, or default.

(e) For the purpose of agency decisions, the record shall include:

(1) All pleadings, motions, intermediate rulings;

(2) Evidence received or considered, including oral testimony, exhibits, and a statement of matters officially noticed;

(3) Offers of proof and rulings thereon;

(4) Proposed findings and exceptions;

(5) Report of the officer who presided at the hearing;

(6) Staff memoranda submitted to members of the agency in connection with their consideration of the case.

(f) It shall not be necessary to transcribe the record unless requested for purposes of rehearing or court review.

(g) No matters outside the record shall be considered by the agency in making its decision except as provided herein.

§ 91–9.5 Notification of hearing; service. (a) Unless otherwise provided by law, all parties shall be given written notice of hearing by registered or certified mail with return receipt requested at least fifteen days before the hearing.

(b) Unless otherwise provided by law, if service by registered or certified mail is not made because of the refusal to accept service or the board or its agents have been unable to ascertain the address of the party after reasonable and diligent inquiry, the notice of hearing may be given to the party by publication at least once in each of two successive weeks in a newspaper of general circulation. The last published notice shall appear at least fifteen days prior to the date of the hearing.

§ 91–10 Rules of evidence; official notice. In contested cases:

(1) Except as provided in section 91–8.5, any oral or documentary evidence may be received, but every agency shall as a matter of policy provide for the exclusion of irrelevant, immaterial, or unduly repetitious evidence and no sanction shall be imposed or rule or order be issued except upon consideration of the whole record or such portions thereof as may be cited by any party and as supported by and in accordance with the reliable, probative, and substantial evidence.

The agencies shall give effect to the rules of privilege recognized by law;

(2) Documentary evidence may be received in the form of copies or excerpts, if the original is not readily available; provided that upon request parties shall be given an opportunity to compare the copy with the original;

(3) Every party shall have the right to conduct such cross-examination as may be required for a full and true disclosure of the facts, and shall have the right to submit rebuttal evidence;

(4) Agencies may take notice of judicially recognizable facts. In addition, they may take notice of generally recognized technical or scientific facts within their specialized knowledge; but parties shall be notified either before or during the hearing, or by reference in preliminary reports or otherwise, of the material so noticed, and they shall be afforded an opportunity to contest the facts so noticed; and

(5) Except as otherwise provided by law, the party initiating the proceeding shall have the burden of proof, including the burden of producing evidence as well as the burden of persuasion. The degree or quantum of proof shall be a preponderance of the evidence.

§ 91–11 Examination of evidence by agency. Whenever in a contested case the officials of the agency who are to render the final decision have not heard and examined all of the evidence, the decision, if adverse to a party to the proceeding other than the agency itself, shall not be made until a proposal for decision containing a statement of reasons and including determination of each issue of fact or law necessary to the proposed decision has been served upon the parties, and an opportunity has been afforded to each party adversely affected to file exceptions and present argument to the officials who are to render the decision, who shall personally consider the whole record or such portions thereof as may be cited by the parties.

§ 91–12 Decisions and orders. Every decision and order adverse to a party to the proceeding, rendered by an agency in a contested case, shall be in writing or stated in the record and shall be accompanied by separate findings of fact and conclusions of law. If any party to the proceeding has filed proposed findings of fact, the agency shall incorporate in its decision a ruling upon each proposed finding so presented. The agency shall notify the parties to the proceeding by delivering or mailing a certified copy of the decision and order and accompanying findings and conclusions within a reasonable time to each party or to the party's attorney of record.

§ 91–13 Consultation by officials of agency. No official of an agency who renders a decision in a contested case shall consult any person on any issue of fact except upon notice and opportunity for all parties to participate, save to the extent required for the disposition of ex parte matters authorized by law.

§ 91–13.1 Administrative review of denial or refusal to issue license or certificate of registration. Except as otherwise provided by law, any person aggrieved by the denial or refusal of any board or commission subject to the jurisdiction of the department of commerce and consumer affairs, to issue a license or certificate of registration, shall submit a request for a contested case hearing pursuant to chapter 91 within sixty days of the date of the refusal or denial. Appeal to the circuit court under section 91–14, or any other applicable statute, may only be taken from a board or commission's final order.

§ 91–14 Judicial review of contested cases. (a) Any person aggrieved by a final decision and order in a contested case or by a preliminary ruling of the nature that deferral of review pending entry of a subsequent final decision would deprive appellant of adequate relief is entitled to judicial review thereof under this chapter; but nothing in this section shall be deemed to prevent resort to other means of review, redress, relief, or trial de novo, including

the right of trial by jury, provided by law. Notwithstanding any other provision of this chapter to the contrary, for the purposes of this section, the term "person aggrieved" shall include an agency that is a party to a contested case proceeding before that agency or another agency.

(b)[23] Except as otherwise provided herein, proceedings for review shall be instituted in the circuit court within thirty days after the preliminary ruling or within thirty days after service of the certified copy of the final decision and order of the agency pursuant to rule of court, except where a statute provides for a direct appeal to the intermediate appellate court, subject to chapter 602. In such cases, the appeal shall be treated in the same manner as an appeal from the circuit court to the intermediate appellate court, including payment of the fee prescribed by section 607-5 for filing the notice of appeal (except in cases appealed under sections 11-51 and 40-91). The court in its discretion may permit other interested persons to intervene.

(c) The proceedings for review shall not stay enforcement of the agency decisions or the confirmation of any fine as a judgment pursuant to section 92-17(g); but the reviewing court may order a stay if the following criteria have been met:

(1) There is likelihood that the subject person will prevail on the merits of an appeal from the administrative proceeding to the court;

(2) Irreparable damage to the subject person will result if a stay is not ordered;

(3) No irreparable damage to the public will result from the stay order; and

(4) Public interest will be served by the stay order.

(d) Within twenty days after the determination of the contents of the record on appeal in the manner provided by the rules of court, or within such further time as the court may allow, the agency shall transmit to the reviewing court the record of the proceeding under review. The court may require or permit subsequent corrections or additions to the record when deemed desirable.

(e) If, before the date set for hearing, application is made to the court for leave to present additional evidence material to the issue in the case, and it is shown to the satisfaction of the court that the additional evidence is material and that there were good reasons for failure to present it in the proceeding before the agency, the court may order that the additional evidence be taken before the agency upon such conditions as the court deems proper. The agency may modify its findings, decision, and order by reason of the additional evidence and shall file with the reviewing court, to become a part of the record, the additional evidence, together with any modifications or new findings or decision.

(f) The review shall be conducted by the appropriate court without a jury and shall be confined to the record, except that in the cases where a trial de novo, including trial by jury, is provided by law and also in cases of alleged irregularities in procedure before the agency not shown in the record, testimony thereon may be taken in court. The court shall, upon request by any party, hear oral arguments and receive written briefs.

(g) Upon review of the record the court may affirm the decision of the agency or remand the case with instructions for further proceedings; or it may reverse or modify the decision and order if the substantial rights of the petitioners may have been prejudiced because the administrative findings, conclusions, decisions, or orders are:

(1) In violation of constitutional or statutory provisions; or

(2) In excess of the statutory authority or jurisdiction of the agency; or

(3) Made upon unlawful procedure; or

(4) Affected by other error of law; or

**23.** Amended subsection (b) of HRS § 91-14 became effective on July 10, 2004 pursuant to 2004 Haw. Sess. L. Act 202, § 8 at 921 but will be repealed on June 30, 2010. 2006 Haw. Sess. L. Act 94, § 1 at 268.

(5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or

(6) Arbitrary, or capricious, or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

(h) Upon a trial de novo, including a trial by jury as provided by law, the court shall transmit to the agency its decision and order with instructions to comply with the order.

(1993 & Supp.2006) (footnote added).

## THE PROCEEDINGS BELOW

On January 10, 2005, E & J submitted an Application for Liquor License to the Commission, seeking a Category 3 General Dispenser License for the Island Colony condominium located at 445 Seaside Avenue in Waikīkī (the premises). A Category 3 liquor license permits liquor consumption on premises at which live entertainment and recorded music are provided and at which dancing may be permitted, as provided by Commission rules.[24]

As required by HRS chapter 281, E & J's application was referred to an investigator who, on February 8, 2005, filed with the Commission a Licensing Investigative Report regarding the application. On February 24, 2005, the Commission, with four members present,[25] held a preliminary hearing to determine whether E & J's application should be scheduled for a public hearing or denied. At the close of the preliminary hearing, the

Commission voted three to one in favor of setting E & J's application for public hearing.

By a letter dated February 25, 2005, the administrator of the Commission notified E & J's attorney that a "public hearing" would be held on April 21, 2005 for the purpose of considering E & J's application "and any protests and objections to the granting of the license" and to determine "whether the license applied for should be granted or refused." The letter also instructed E & J that it must mail notices of the public hearing to the neighboring property owners and lessees, registered voters, and businesses within the 500–foot and 100–foot radiuses. Additionally, the letter instructed that within seven days of mailing the required notices of public hearing, E & J must file with the Commission: (1) an affidavit of mailing; (2) a master list containing (a) one hundred percent of the addresses of every neighboring property owner and lessee, registered voter, and small business required to receive notice of the public hearing, even if they were not included in the two-thirds or three-fourths requirement and (b) every condominium project and cooperative apartment; and (3) "a *mailing list* consisting of the portion of the addressees and their respective addresses who were mailed the notices purposely needed to meet the foregoing requirements[.]"

On March 3 and 10, 2005, the Commission published notice in the Midweek and the Honolulu Star–Bulletin newspapers that a public hearing would be held on E & J's application at 4 p.m. on April 21, 2005. The notice stated that persons wishing to testify for or against the granting of a license to E

---

**24.** HRS § 281–31 (Supp.2006) currently provides, as it did when E & J filed its application for a liquor license, in relevant part, as follows:

Licenses, classes. (a) Licenses may be granted by the liquor commission as provided in this section.
. . . .
(f) Class 5. Dispensers' licenses.
(1) A license under this class shall authorize the licensee to sell liquors specified in this subsection for consumption on the premises. A licensee under this class shall be issued a license according to the category of establishment the licensee owns or operates. The categories of establishments shall be as follows:
. . . .

(C) A premise in which live entertainment or recorded music is provided; provided that facilities for dancing by the patrons may be permitted as provided by commission rules; or
. . . .
(3) For each category of class 5 licenses there shall be the following kinds:
(A) General (includes all liquors except alcohol);
(B) Beer and wine; and
(C) Beer.

**25.** The record on appeal indicates that the fifth authorized position on the Commission was vacant at the time of the February 24, 2005 preliminary hearing.

& J "may either testify in person at the Liquor Commission meeting or submit a written protest to the Administrator of the Commission three (3) working days prior to the date and time of the hearing." [26]

On March 14, 2005, E & J's attorney filed with the Commission an Affidavit of Mailing, verifying the total number of neighboring property owners and lessees, small businesses, registered voters, condominiums, and cooperative apartment buildings within the 500-foot and 100-foot radiuses and attesting that a notice of the April 21, 2005 public hearing was mailed on March 7, 2005 to not less than the statutorily required percentages of these groups, respectively.

At the April 21, 2005 public hearing on E & J's application, only three of five Commissioners were present: Dennis Enomoto (Enomoto), Danny Kim (Kim), and Chu Lan Shubert Kwock (Kwock). At the outset of the hearing, the administrator of the Commission reported that six letters (one in support of, and five protesting, the application) had been filed and included in the Commissioners' packets. The Commission then heard testimony from the public on E & J's application. Those protesting the application identified the following issues: inadequate notice to neighboring property owners and lessees (mail-out discrepancies), inaccuracies in the voter-registration lists, additional noise from music and patrons, inadequate location (residential area), inadequate parking, increased pedestrian and vehicular traffic, and potential for increased crime and added security costs. Persons testifying in support of the application praised E & J's management and noted that when E & J operated a pub at a previous location, patrons enjoyed a safe environment, employees enjoyed a good work environment, and there were minimal complaints from neighbors about noise and other issues.

After testimony was received, a motion was made to deny the application. The motion failed by a vote of two to one.[27] Upon being advised by its counsel that "if the matter is not denied within 15 days of this hearing, the state law requires that the license be issued[,]" the Commission continued the hearing for one week to April 28, 2005.

At the continued hearing on April 28, 2005, four Commissioners were in attendance: Enomoto, Kim, Kwock, and Danny Auyoung (Auyoung). The administrator of the Commission noted that a Supplemental Licensing Investigative Report dated April 28, 2005 had been filed. According to the supplemental report, as of April 27, 2005, at 1545 hours, the following protests to the application had been received: 185 signatures on petitions from individuals identifying themselves as registered voters, 139 let-

---

**26.** By informing the public that written protests had to be submitted to the administrator of the Commission three working days prior to the April 21, 2005 public hearing, the notice appears to comply with Rule 3–83–58.1 of the Rules of the Liquor Commission of the City and County of Honolulu, State of Hawaii (June 2005), which states in pertinent part: "Protests against the granting of a license should be filed with the Commission at least three (3) working days prior to the date of the public hearing on the application, provided the Commission may in its discretion allow additional protests to be filed at the public hearing or any adjournment thereof." However, the notice appears to be inconsistent with HRS § 281–57(b), which provides that the notice "shall require that all protests or objections against the issuance of the license applied for shall be filed with the administrator of the commission *at* or before the time of hearing." (Emphasis added.)

**27.** HRS § 281–13 (Supp.2006) currently provides, as it did during the proceedings below, in relevant part, as follows:

Meetings. . . .

A majority of all the members of the commission . . . shall constitute a quorum for the transaction of business, but the affirmative vote of a majority of all of the members shall be necessary to determine any matter before it. HRS § 281–11(a) (Supp.2006) provides in part that "[a] liquor commission . . ., consisting of not less than five members, no more than the minimum required for a quorum of whom shall belong to the same political party at the time of appointment, may be created for each of the counties." The statute does not specify which body—the legislature or the various county councils—was to create the liquor commissions, and we have been unable to locate any statute or ordinance that actually created the Commission. However, it appears from the record that there are five authorized members on the Commission, and therefore, the affirmative vote of three members is necessary to determine any matter before the Commission.

ters from individuals identifying themselves as registered voters, and 71 signatures on petitions from individuals and 119 letters from individuals identifying themselves as neighboring property owners or lessees residing within the 500–foot radius of the premises. The supplemental report also mentioned that "[t]here were 41 signatures on letters or petitions by individuals who claimed that they should have received the Notice of Hearing that was supposedly mailed by [E & J], but they did not receive such notice." Additionally, the report pointed out an apparent discrepancy in the registered-voter count:

> [E & J] appeared to have included in its voter and mailing count, registered voters that were outside of the 500' radius. [E & J] also failed to include voters within the 500' radius. With the exclusions and inclusions accounted for, the numbers and percentage are:

| | |
|---|---|
| REGISTERED VOTERS WITHIN 500' | 594 |
| MAILINGS TO REGISTERED VOTERS WITHIN 500' | 398 |
| PERCENTAGE OF REGISTERED VOTERS MAILED NOTICES | 67% |

The administrator of the Commission informed the Commission that the documents submitted had not been verified and his staff would need more time, "perhaps two weeks[,]" to "examine the documents and come back with a report verifying what is or is not a valid protest."

The public submitted further testimony at the continued hearing and again raised concerns about noise, parking, security, liability, and crime. Questions were also raised about whether E & J's lease allowed E & J to conduct the type of operations being proposed at the premises. The Commission then closed the public hearing, continued the hearing for decisionmaking to May 12, 2005, and ordered that all written letters of protests or support be submitted by the next

day[28] to allow verification and tabulation of the number of protests. The following day, April 29, 2005, the Commission received additional letters protesting or supporting E & J's application.

At the continued May 12, 2005 decision-making hearing, only three Commissioners were present: Auyoung, Enomoto, and Kwock. John A. Carroll (Carroll), the Chief Liquor Control Investigator, informed the Commission that there was a total of 754 registered voters within the 500–foot radius and 241 valid protests, for a registered-voter-protest percentage of thirty-two percent. The investigator assigned to E & J's application reported that because he had been ill, he was not able to verify the total amount of neighboring property owners and lessees, as well as the valid protests by the neighboring property owners and lessees within the 500–foot radius. E & J's attorney objected to the Commission rendering a decision that day, arguing that Auyoung "was missing" from the April 21, 2005 public hearing, and therefore, "the only way [Auyoung] could vote is if he went through the transcript" of that hearing, which was not yet available.

At the conclusion of the hearing, the Commission voted to deny E & J's application. On July 14, 2005, the Commission served on E & J's attorney a certified copy of its written Findings of Fact, Conclusions of Law, Decision and Order (Decision), dated June 16, 2005.

On August 11, 2005, E & J filed a notice of appeal to the circuit court pursuant to HRS § 91–14. On November 15, 2005, the circuit court granted the September 6, 2005 Motion to Intervene filed by Intervenors–Appellees/Cross–Appellants Bill Maxwell and Emily Reed and the September 26, 2005 Motion to Intervene filed by Intervenors–Appellees/Cross–Appellants H. James Stahl, Tyson J. Thomas, and Randi Thomas (collectively,

---

28. We question whether the Commission was authorized to accept further letters of protest or support. Pursuant to HRS § 281–57(b), the cut-off time for receipt of protests or objections against the issuance of a liquor license is the date of the hearing stated in the hearing notice that is published in the newspaper. If the Commission continues the hearing because it is unable to complete its decision-making on the published hearing date, there appears to be no statutory authority that allows the Commission to accept additional protests. If the date for receipt of protests is a moving target, it would be difficult for the Commission or its staff to determine whether the requisite number of protests has been received for automatic refusal of the application pursuant to HRS § 281–59(a)(2) (Supp. 2006).

Intervenors). On December 14, 2005, Intervenors filed in the circuit court an Application to Present Additional Evidence to the Commission, alleging the Commission's noncompliance with HRS § 281–57.

On April 20, 2006, after hearings held on December 14, 2005 and February 1, 2006, the circuit court entered Findings of Fact, Conclusions of Law, and Decision and Order. The circuit court concluded as follows:

## CONCLUSIONS OF LAW

1. The Commission is required to hold a public hearing prior to issuance of a liquor license under HRS § 281–52.

2. Hawaii Courts have determined that public hearings held before administrative agencies are contested cases.

3. [E & J] seeks relief before this Court pursuant to HRS § 91–14 which permits judicial relief for any person aggrieved by an agency's final decision and order in a contested case.

4[.] The public hearings held before the Commission prior to issuance of a Liquor License are adjudicatory in nature and are therefore contested cases.

5. This Court therefore has jurisdiction over [E & J's] appeal from the Commis-

sion's denial of its Liquor License Application.

6. Intervenors' Application to Present Additional Evidence, pursuant to HRS § 91–14(e) was timely filed.

7. Because the public hearing before the Commission is a contested case hearing, the Commission was required to comply with the contested case procedures in HRS Section 91 et seq. including HRS § 91–11. The Commission did not comply with HRS § 91–11.

8. Under HRS § 281–59(a) the Commission is required to approve or deny the license application within 15 day [sic] of closing of the public hearing unless they extend the time to thirty days.

9. HRS § 91–13.5(c) requires the Commission to take action on the application within the time prescribed by HRS § 281–59(a) or the license is deemed granted.[29]

10. At this time the Court does not rule on whether the Commission's denial of the Application in light of its failure to comply with HRS § 91–11, would be deemed a failure to act under HRS § 19–13.5(c) [sic].

11. Under HRS § 281–59(b) the Commission was required to make a ruling on

29. Although Conclusion of Law No. 9 has not been challenged on appeal, we have some doubts about its correctness. At the time E & J applied for a liquor license, HRS § 91–13.5 (Supp.2004) provided:

Maximum time period for business or development-related permits, licenses, or approvals; automatic approval; extensions. (a) Unless otherwise provided by law, an agency shall adopt rules that specify a maximum time period to grant or deny a business or development-related permit, license, or approval; provided that the application is not subject to state administered permit programs delegated, authorized, or approved under federal law.

(b) All such issuing agencies shall clearly articulate informational requirements for applications and review applications for completeness in a timely manner.

(c) All such issuing agencies shall take action to grant or deny any application for a business or development-related permit, license or approval within the established maximum period of time, or the application shall be deemed approved.

(d) The maximum period of time established pursuant to this section shall be extended in the event of a national disaster, state emergency, or union strike, which would prevent the

applicant, the agency, or the department from fulfilling application or review requirements.

(e) *For purposes of this section, "application for a business or development-related permit, license, or approval" means any state or county application, petition, permit, license, certificate, or any other form of a request for approval required by law to be obtained prior to the formation, operation, or expansion of a commercial or industrial enterprise, or for any permit, license, certificate, or any form of approval required under sections 46–4, 46–4.2, 46–4.5, 46–5, and chapters 183C, 205, 205A, 340A, 340B, 340E, 340F, 342B, 342C, 342D, 342E, 342F, 342G, 342H, 342I, 342J, 342L, and 342P.* (Emphasis added.) A liquor license is issued pursuant to HRS chapter 281, not one of the statutory sections referenced in HRS § 91–13.5 (Supp.2006). Additionally, since many restaurants and commercial or industrial enterprises operate without a liquor license, it is not clear whether a liquor license is the type of license "required by law to be obtained prior to the formation, operation, or expansion of a commercial or industrial enterprise" that the legislature intended to be subject to the automatic approval requirements of HRS § 91–13.5.

corrections, additions or subtraction of the persons required to be notified of the public hearing, as required under HRS § 281–59(a). The Court finds that the Commission did not make such rulings.

12. Under HRS § 281–57 if the proper notices have not been sent out, the Commission shall cancel the public hearing.

13. The Commission did not make a determination as required under HRS § 281–57 that the proper number of notices had been sent out.

14. The Court grants the Intervenors' Application to Present Additional Evidence.

### DECISION AND ORDER

IT IS HEREBY ORDERED, AD-JUDGED AND DECREED that the decision of the Commission to Deny [E & J's] Application is REVERSED and RE-MANDED; and that Application to Present Additional Evidence is hereby GRANTED with the following instructions:

1. The Commission shall determine whether the proper notice as required under HRS § 281–57 was made by [E & J]. In doing so the Commission may accept additional evidence and argument, and may hold additional hearings regarding the proper number or persons required to be served under HRS § 281–57.

2. Upon determining the proper number of persons required to be served under HRS § 281–57, the Commission may grant or deny the Application based on its ruling, may require [E & J] to serve all persons required to be served under HRS § 281–59, and or hold additional public hearings.

(Footnote added, citations omitted.)

The April 20, 2006 judgment followed. On May 18, 2006, the Commission filed a notice of appeal, and on May 22, 2006, Intervenors filed a notice of cross-appeal.

### POSITIONS OF THE PARTIES

In its opening brief, the Commission states that

[it] appeals [the circuit court's] decision, not on the grounds that a party should not be allowed to appeal the denial or granting of a liquor license on the grounds provided under HRS § 91–14(g) but rather that the Circuit Court determined that the liquor license application must follow the contested case procedures under HRS 91 *et seq.* [sic] including the right to cross-examination and the exclusion of irrelevant, immaterial and redundant evidence.

Contested case hearings are adjudicatory in nature and their procedures are governed by HRS § 91–9 through § 9[1]–11 and also include § 91–12 and § 91–14. The Hawaii Supreme Court [sic] has summarized the procedural requirements for a contested case as follows:

HRS §§ 91–9 to –13 (1993) set forth the procedures to be afforded parties in a 'contested case' including: (1) reasonable notice; (2) the opportunity to present evidence and argument; (3) an agency decision on the record; (4) rules of evidence, including, where oral evidence is received by the agency, the right to cross-examine and the right to submit rebuttal evidence; (5) a written decision accompanied by findings of fact and conclusions of law; and (6) a prohibition against ex parte communications.

*Alejado v. City and County of Honolulu and City and County of Honolulu Police Commission,* 89 [Hawai'i] 221, 225, 971 P.2d 310, 314 ([App.] 1998).

Public hearings, on the other hand are governed by HRS § 92–1 through § 92–16, also referred to as the State's "Sunshine Laws". In comparing the procedures required for contested cases and public hearings, there appears [sic] to be some similarities, however, the purpose and intent of the two types of hearings are quite different. Where the contested case focuses on the protection of the parties to the action, the "Sunshine Laws" [sic] intent is to provide open government and to protect the "people's right to know". HRS § 92–1.

Intervenors agree with the Commission's position that hearings on applications for liquor licenses are not contested cases. They argue that HRS chapter 281 is a "hybrid" statute that "defines and classifies different kinds of hearings" to be held for particular

situations. They pointed out during their oral argument before this court, for example, that pursuant to HRS § 281–91 (Supp.2006), hearings to suspend or revoke a liquor license must be held in conformity with HRS chapter 91. In contrast, the statutes governing the granting or denial of an application for a liquor license expressly require a "public hearing" with very different notice requirements and procedures than a contested-case hearing held pursuant to HRS chapter 91.

E & J argues that the liquor license application process in which it participated was required to be a contested-case hearing because (1) the Commission "is a county commission authorized by law to make rules and to adjudicate whether to issue liquor licenses[;]" and (2) "the proceedings to determine whether a liquor license was to be issued to E & J were required by law." E & J urges us to affirm the circuit court's "determination that liquor license application public hearings are adjudicatory in nature and therefore must comply with the contested-case procedures and specifically the rules of evidence as set forth in HRS § 91–10."

## DISCUSSION

A. *Whether the Commission Was Required to Hold a "Contested Case" Hearing on E & J's Application for a Liquor License*

1.

HRS § 91–1(5) (1993) defines a "[c]ontested case" as "a proceeding in which the legal rights, duties, or privileges of specific parties are required by law to be determined after an opportunity for agency hearing." An "[a]gency hearing" is defined as "such hearing held by an agency immediately prior to a judicial review of a contested case as provided in section 91–14." HRS § 91–1(6).

Construing the foregoing definitions together, the Hawai'i Supreme Court has stated that "a contested case is an agency hearing that 1) is required by law *and* 2) determines the rights, duties, or privileges of specific parties." *Kaniakapupu v. Land Use Comm'n*, 111 Hawai'i 124, 132, 139 P.3d 712, 720 (2006) (brackets and internal quo-

tation marks omitted) (quoting *Pub. Access Shoreline Hawai'i v. Hawai'i County Planning Comm'n*, 79 Hawai'i 425, 431, 903 P.2d 1246, 1252 (1995)). The supreme court elaborated:

> In ·order for an agency hearing to be "required by law," it may be required by (1) agency rule, (2) statute, or (3) constitutional due process. . . .
>
> . . . .
>
> This court has stated that, "if the rule governing the activity in question does not *mandate* a hearing prior to the administrative agency's decision-making, the actions of the administrative agency are not 're-quired by law' and do not amount to a 'final decision or order in a contested case' from which a direct appeal to circuit court is possible."

*Kaniakapupu v. Land Use Comm'n*, 111 Hawai'i at 132, 139 P.3d at 720 (brackets and ellipsis omitted).

In *Bush v. Hawaiian Homes Comm'n*, 76 Hawai'i 128, 137, 870 P.2d 1272, 1281 (1994), the Hawai'i Supreme Court held that the appellants, native Hawaiians who were beneficiaries of the Hawaiian Homes Commission Act (the HHCA), were not entitled to seek judicial review pursuant to HRS § 91–14(a) (1993) of a decision by the Hawaiian Homes Commission (HHC) to approve third-party agreements (TPAs) between native Hawaiian lessees of HHC homestead agricultural lots on Moloka'i and non-Hawaiian third parties who were using the leased lots for agribusiness purposes. *Id.* at 128, 870 P.2d at 1281. The supreme court noted that "HRS § 91–14(a) allows any person 'aggrieved by a final decision and order in a contested case' to invoke judicial review pursuant to HAPA." *Id.* at 133, 870 P.2d at 1277. Therefore, it was necessary to "determine whether there was a final decision and order in a contested case from which a direct appeal to circuit court can be taken." *Id.*, 870 P.2d at 1277. This required a review of what had transpired before HHC so that the proceedings could be correctly characterized "as either a 'contested case' or simply an agency meeting." *Id.* at 133 n. 2, 870 P.2d at 1277 n. 2. The supreme court explained that the fact

that the appellants were aggrieved by HHC's action was not dispositive:

> Appellants may well have been aggrieved by [HHC's] decision to approve the TPAs, inasmuch as the approved TPAs may have enabled the formation of agribusinesses which in turn unduly burdened Appellants' farming practice. Thus, Appellants could claim they were "specially, personally and adversely affected" by the administrative decision. *Kona Old Hawaiian Trails*, 69 Haw. at 90, 734 P.2d at 167 (citing *In re Hawaiian Electric Co.*, 56 Haw. 260, 264, 535 P.2d 1102, 1105 (1975)).
>
> However, it is not enough that a person has been aggrieved by agency action. *He or she " 'must have participated in a contested case before an administrative agency,' to acquire standing to challenge the decision in court."*

*Id.* at 134, 870 P.2d at 1278 (emphasis added; brackets omitted). The supreme court also said that since an "agency hearing" must be "required by law" to constitute a contested case for purposes of judicial review, the "pivotal determination ... is what constitutes the 'required by law' prerequisite[.]" *Id.*, 870 P.2d at 1278.

Turning to this issue, the supreme court initially explained:

> If the statute or rule governing the activity in question does not *mandate* a hearing prior to the administrative agency's decision-making, the actions of the administrative agency are not "required by law" and do not amount to "a final decision or order in a contested case" from which a direct appeal to circuit court is possible.

*Id.*, 870 P.2d at 1278. Observing that "the HHCA contains no provision requiring [HHC] to hold a hearing prior to decisionmaking as to TPAs[,]" the supreme court held that "there is no statutory mandate entitling Appellants to a hearing." *Id.*, 870 P.2d at 1278.

The supreme court next examined whether HHC's rules mandated that a contested case be held prior to HHC's decisionmaking on the TPAs. The supreme court noted that HHC had adopted rules describing the procedural requirements for filing a petition for a contested-case hearing. *Id.* at 135, 870

P.2d at 1279. The supreme court held, however, that these rules did not mandate a contested-case hearing, but instead provided

> a *conditional* right to a contested case hearing, dependent upon [HHC's] evaluation of the matter. Further, if the complaint involves a private controversy redressable in the courts and where the public interest is not involved, [HHC] has a rule-based justification to deny the petition.
>
> Although the procedures involved in requesting a contested case hearing, and the substance of a contested case hearing once it has been granted by [HHC], are outlined in the administrative rules, the absolute right to such a hearing is not provided by these same rules. [HHC] is granted wide administrative discretion to determine the validity of a particular claim and is not *required* to hold a contested case hearing. Consequently, there is no regulatory mandate for a hearing prior to [HHC's] decision on TPA petitions.

*Id.*, 870 P.2d at 1279.

The supreme court then analyzed whether a contested-case hearing was constitutionally mandated:

> "The phrase *required by law* embraces both constitutional as well as statutory law." Therefore, despite the absence of a statutory or regulatory mandate, "the adjudicatory procedures of the Hawai'i [sic] Administrative Procedure Act apply to hearings which an agency is constitutionally required to provide."

As discussed above, because no statute or regulation requires a hearing on the consideration of TPAs, the hearings in which [HHC] considered the homestead lessees' petitions to approve their TPAs would be required by law, and therefore constitute a contested case hearing for the purposes of appellate review, only if due process mandated such a hearing.

The claim to a due process right to a hearing requires that the particular interest which the claimant seeks to protect be "property" within the meaning of the due process clauses of the federal and state constitutions. A "property interest" is not

limited to "the traditional 'right-privilege' distinction, but also includes a benefit which one is entitled to receive by statute." "'To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He [or she] must have more than a unilateral expectation of it. He [or she] must, instead, have a legitimate claim of entitlement to it.'" In the instant case, the subject matter of the hearing was the twenty-three homestead lessees' petitions for approval of their TPAs, not Appellants' right to maintain their leaseholds. The dispositive issue, therefore, is whether the homestead lessees' interest in entering into TPAs, not Appellants' entitlement to maintain the agrarian lifestyle on their leaseholds, constitutes a "property" interest such that the incumbent hearing was a "contested case" pursuant to HRS § 91–14(a).

The TPAs can only be characterized as "subleases," as referred to in § 208(5) of the HHCA, "transfers of homestead leases," as defined in HAR § 10–3–36, or "contracts covering lease lands," pursuant to the HAR § 10–3–35. Regardless of which characterization [HHC] utilized, the TPAs cannot be considered "property" interests because a sublease, transfer, or contract covering leased lands does not constitute a property interest pursuant to the relevant sections of the HHCA and the HAR. Thus, the right to sublease, transfer home-

stead leases, or enter into a contract covering the leases is not "substantial enough to require agency hearings prior to [HHC's] decision." Accordingly, because the subject matter of the underlying hearing did not involve the homestead lessees' "property" interests, the hearing that transpired was not "required by law" and therefore was not a contested case as defined by HRS 91–1(5) (1985).

*Id.* at 135–36, 870 P.2d at 1279–80 (citations, footnotes, brackets, and ellipsis omitted).

The supreme court concluded in *Bush* as follows:

Without a statutory, rule-based, or constitutional mandate for a hearing, the hearing that took place was not "required by law" and therefore did not constitute a "contested case" for the purposes of obtaining appellate review pursuant to HRS § 91–14(a). Consequently, judicial review by the circuit court of [HHC's] denial of Appellants' request for a contested case hearing as well as review of the Commission's approval of the TPAs is unattainable due to a lack of subject matter jurisdiction.

*Id.* at 136, 870 P.2d at 1280.[30]

### 2.

In this case, there is no question that HRS chapter 281 mandates, in most circumstances, that the Commission conduct a "public hearing" when it considers an application

---

**30.** In opinions prior to *Bush v. Hawaiian Homes Comm'n,* 76 Hawai'i 128, 870 P.2d 1272 (1994), the supreme court held that persons appearing at a statutorily prescribed public hearing similar to the one conducted by the Commission and who voiced objections to a proposal being considered by the agency conducting the public hearing are "persons aggrieved" by the agency's decision and thus entitled to judicial review of a "contested case" pursuant to HRS § 91–14. In *East Diamond Head Ass'n v. Zoning Bd. of Appeals,* 52 Haw. 518, 479 P.2d 796 (1971), for example, the Hawai'i Supreme Court held that owners whose property adjoined a parcel of land for which a zoning variance had been granted by a county zoning board of appeals (the zoning board), thereby allowing the parcel to be used for a movie studio, were "person[s] aggrieved" under HRS § 91–14(a) (1968) and "must be afforded judicial review should [they be found to have] comported with all other necessary administrative procedures at the lower level." *Id.* at 522, 479 P.2d at 798 (brackets omitted). The su-

preme court noted that the zoning board had not adopted any procedural rules that specified the requirements for formal intervention by property owners in the proceedings before the zoning board, and since the owners had submitted written letters and appeared before the zoning board to voice objections to the variance, they had "done everything possible to perfect an appeal." *Id.* at 524, 479 P.2d at 799. Additionally, without any discussion regarding the procedural differences between a "public hearing" and a "contested case hearing," the supreme court held: "That the public hearing was not a 'contested case' is without merit." *Id.,* 479 P.2d at 799 (footnote omitted).

Although the supreme court in *Bush* did not expressly overrule *East Diamond Head Ass'n* and similar cases, we conclude that the analytical structure used by the *Bush* court should be applied in determining whether a hearing conducted by a public agency constitutes a "contested case" for purposes of HRS § 91–14 judicial review.

for a liquor license. *See* HRS §§ 281–52 and 281–59. Indeed, HRS § 281–52 expressly provides that "[n]o license shall be granted except after a *public hearing* by the liquor commission upon notice as prescribed in this chapter[.]" (Emphasis added.) However, the statutory procedures governing the "public hearings" that the Commission must hold in considering liquor license applications are very different in nature from the procedures governing a "contested case" hearing under HRS chapter 91.

The public hearings required by HRS chapter 281 are designed to elicit public comments, especially from neighbors surrounding the premises for which a liquor license is sought, about the wisdom of allowing a liquor license for the premises. Moreover, in recognition of the unique problems that the sale of liquor may cause a surrounding neighborhood, HRS § 281–59(a) expressly provides that an application for a liquor license "shall be refused" if a majority of the neighboring property owners and lessees within the 500–foot radius of the premises for which a liquor license is sought or a majority of the registered voters within the same 500–foot radius protest the granting of the license. The public hearings the Commission must con-

duct when considering a liquor license application are not trial-like in nature, but are more akin to the public hearings that legislative committees conduct to receive public input on proposed bills or the public hearings that state and county agencies conduct as part of the process for adopting, amending, or repealing rules. *See* HRS § 91–3(a)(1) (Supp.2006).[31]

The procedures that govern the conduct of "contested case" hearings, as set forth in HRS chapter 91, call for a trial-type evidentiary hearing in which "parties" admitted to the case are entitled to written notice by registered or certified mail, at least fifteen days before the hearing, of: (1) the date, time, place, and nature of the hearing; (2) the particular legal authority under which the hearing is held; (3) the particular sections of the statutes and rules involved; (4) a statement of the issues involved and the facts alleged by the agency in support thereof; and (5) the fact that a party may retain counsel to appear on the party's behalf. HRS § 91–9(b). Moreover, no statutory requirement exists that public notice of the proceeding be published in a newspaper and mailed to interested parties, such as residents, voters, and businesses who reside in or are

---

**31.** HRS § 91–3(a)(1) (Supp.2006) currently provides, as it did when the proceedings below took place, as follows:

Procedure for adoption, amendment, or repeal of rules. (a) Except as provided in subsection (f), prior to the adoption of any rule authorized by law, or the amendment or repeal thereof, the adopting agency shall:

(1) Give at least thirty days' notice for a public hearing. The notice shall include:

(A) A statement of the topic of the proposed rule adoption, amendment, or repeal or a general description of the subjects involved; and

(B) A statement that a copy of the proposed rule to be adopted, the proposed rule amendment, or the rule proposed to be repealed will be mailed to any interested person who requests a copy, pays the required fees for the copy and the postage, if any, together with a description of where and how the requests may be made;

(C) A statement of when, where, and during what times the proposed rule to be adopted, the proposed rule amendment, or the rule proposed to be re-

pealed may be reviewed in person; and

(D) The date, time, and place where the public hearing will be held and where interested persons may be heard on the proposed rule adoption, amendment, or repeal.

The notice shall be mailed to all persons who have made a timely written request of the agency for advance notice of its rulemaking proceedings, given at least once statewide for state agencies and in the county for county agencies. Proposed state agency rules shall also be posted on the Internet as provided in section 91–2.6; and

(2) Afford all interested persons opportunity to submit data, views, or arguments, orally or in writing. The agency shall fully consider all written and oral submissions respecting the proposed rule. The agency may make its decision at the public hearing or announce then the date when it intends to make its decision. Upon adoption, amendment, or repeal of a rule, the agency, if requested to do so by an interested person, shall issue a concise statement of the principal reasons for and against its determination.

situated in the area surrounding the premises for which a liquor license is sought.

At a contested-case hearing, the parties are given the opportunity to present arguments on all issues, submit evidence, and cross-examine witnesses. HRS § 91–10. The hearing is adversarial in nature, and the party initiating the proceeding has the burden of proof, including the burden of producing evidence as well as the burden of persuasion. HRS § 91–10(5). The record of the hearing must be transcribed upon request for purposes of rehearing or court review, HRS § 91–9(f), and decisions and orders adverse to a party to the proceeding must be accompanied by separate written findings of fact and conclusions of law. HRS § 91–12. Additionally, if the officials who are to render the final decision have not heard and examined all the evidence submitted, which commonly occurs when the officials are volunteer members of a state or county board or commission, no final decision can be made until a proposed decision containing a statement of reasons and a determination of each issue of fact or law necessary to the decision has been served on each party adversely affected. HRS § 91–11. Such affected parties are then entitled to file exceptions and present argument to the officials who are to render the final decision. *Id.* In other words, contested-case proceedings are generally more costly, time consuming, and burdensome than public hearings. For practical reasons, boards or commissions required to conduct contested-case hearings often resort to hiring hearings officers to take evidence and recommend decisions to the board or commission.

3.

■ The crux of this appeal is whether the Commission was required to conduct both the public hearing required by HRS chapter 281 *and* a contested-case hearing that complied with the requirements of HRS §§ 91–9 to 91–13 in denying E & J's application for a license.

For the following reasons, we conclude that in denying E & J's application for a liquor license, the Commission was not required to hold a contested-case hearing in addition to the required public hearing.

### a. No contested-case hearing is required by statute

First, there is no express requirement imposed by HRS chapter 281 or any other statute that the Commission hold a contested-case hearing when it considers an application for a liquor license. In contrast, various sections of HRS chapter 281 specifically require the Commission to hold a contested-case hearing pursuant to HRS chapter 91 under other circumstances. For example, HRS § 281–61(b) (Supp.2006) [32] requires "a hearing before the commission pursuant to [HRS] chapter 91" when the Commission revokes, suspends, or places conditions or restrictions on a liquor license that is subject to renewal. Additionally, liquor licensees are usually entitled to a chapter 91 hearing when threatened with penalty assessments or revocation or suspension of their license. HRS § 281–91 (Supp.2006).[33] Thus, under HRS

---

32. HRS § 281–61(b) (Supp.2006) provides:

   Renewals....
   (b) *The commission, at the time of renewal or at any time, may revoke, suspend, or place conditions or restrictions on any license issued under this chapter* for the purpose of preventing activities within the licensed premises or adjacent areas under the licensee's control that are potentially injurious to the health, safety, and welfare of the public including but not limited to criminal activity, including assault, drug dealing, drug use, or prostitution, *upon petition of the administrator of the appropriate county agency, proper notice to the licensee, and a hearing before the commission pursuant to chapter 91.*
   (Emphases added.)

33. HRS § 281–91 (Supp.2006) provides, in relevant part, as follows:
   Revocation or suspension of license; hearing. ...
   In every case where it is proposed to revoke or suspend the exercise of any license or assess and collect a penalty for any cause other than a conviction at law of the licensee as above specified, *the licensee shall be entitled to notice and hearing in conformity with chapter 91,* the notice to be given at least five days before the hearing, except that any special license shall be subject to summary revocation for any violation of or evidence of intent to violate the proper exercise thereof, without hearing before the commission or board.
   At the hearing, before final action is taken by the commission or board, the licensee shall be

chapter 281, a distinction exists between an initial application for a liquor license, which requires a public hearing but not a contested-case hearing to be held, and a proceeding that affects an existing liquor license, which requires that a contested-case hearing be conducted.

We are aware that in *Town v. Land Use Comm'n*, 55 Haw. 538, 524 P.2d 84 (1974), the Hawai'i Supreme Court, in a three-to-two decision, determined that a contested-case hearing was required to be held in addition to the statutorily mandated public hearing, when the Land Use Commission (LUC) considered a petition to redistrict property from agricultural to rural, which was challenged by an adjoining property owner. However, *Town* is distinguishable from this case.

In *Town*, the supreme court determined that the adjoining property owner had a property interest in the district-boundary amendment and was therefore entitled to a contested-case determination of his rights, including the opportunity to present argument or rebuttal evidence to counter ex parte arguments made by the petitioner for the boundary change. *Id.* at 548–49, 524 P.2d at 91–92. Additionally, the supreme court stated: "We find nothing in HRS chapter 205, the enabling statutes of the [LUC] which would exempt the [LUC], from the procedures set by HAPA." *Id.* at 545, 524 P.2d at 89. In this case, E & J has no "property interest" in a possible liquor license. Additionally, the statutory framework established by HRS chapter 281 clearly indicates a legislative intent to exempt the Commission from the contested-case procedures set forth in HRS chapter 91 when it decides applications for liquor licenses and to require the Commission to hold a public hearing in compliance with HRS chapter 281 instead.

E & J insists that since HRS §§ 281–52 and 281–59 require the Commission to conduct a "public hearing" before issuing a liquor license and the hearing determines E & J's legal rights, duties, or privileges to receive a liquor license, the hearing constitutes a "proceeding in which the legal rights, duties, or privileges of specific parties are required by law to be determined after an opportunity for agency hearing" and is therefore a "[c]ontested case" as defined in HRS § 91–1(5).

■ However, not every "agency hearing" required by law is a "contested case." Only an evidentiary hearing "required by either statute, rule, the United States Constitution, or the Hawai'i Constitution" qualifies as a contested case. *See In re Robert's Tours & Transp., Inc.*, 104 Hawai'i 98, 105, 85 P.3d 623, 630 (2004) (holding that an "evidentiary hearing" on an application to the Public Utilities Commission (PUC) for a certificate of public convenience and necessity (CPCN) was not required by statute because "HRS § 271–12, which governs applications for [CPCNs], does not mention—let alone require—an *evidentiary* hearing."). *Id.* at 105, 85 P.3d at 630 (emphasis added).

The legislative history of HAPA supports this conclusion. Although HAPA was structured after the 1961 Model APA, there is no definition for "agency hearing" in the Revised 1961 Model State Administrative Procedure Act (1961 Model APA); the term is unique to HAPA. In considering House Bill No. 5, which was ultimately enacted into law as Act 103, 1961 Haw. Sess. L. 85, and codified as HRS chapter 91, the House Judiciary Committee explained why the definition of "agency hearing" was added to HAPA:

The intent of your Committee in inserting this definition is to clarify at what stage the formality required under Section 9 [now HRS § 91–9] appl[ies] within an agency when more than one step is provided by law in which the adjudication of a matter in dispute will be handled by an agency. This definition is to make clear that, *in the area of "contested cases", a*

entitled to be heard in person or through counsel and shall be given a full and fair opportunity to present any facts showing that the alleged cause or causes for the proposed action do not exist, or any reasons why no penalty should be imposed. The testimony taken at the hearing shall be under oath and recorded stenographi-

cally, or by machine, but the parties shall not be bound by the strict rules of evidence; certified copies of any transcript and of any other record made of or at the hearing shall be furnished to the licensee upon the licensee's request and at the licensee's expense.

person would be required to exhaust his [or her] administrative remedies, and that the formality required under Section 9 would apply at the stage within the agency immediately prior to the stage when judicial review becomes available as provided in Section 14 of this bill [now HRS § 91–14].[34]

Hse. Stand. Comm. Rep. No. 8, in 1961 House Journal, at 656 (emphasis and footnote added). Thus, the term "agency hearing" was not intended to incorporate hearings other than contested-case proceedings within its scope.

### b. *There is no rule that requires a contested-case hearing*

Second, there is no requirement in the Commission's rules that a contested-case hearing be conducted by the Commission before it decides whether to grant or deny an application for a liquor license. A contested-case hearing is thus not required by rule.

### c. *There is no constitutional requirement for a contested-case hearing*

■ Third, there is no constitutional due process requirement for a contested-case hearing when the Commission considers an application for a liquor license. According to the Hawai'i Supreme Court:

The claim to a due process right to a hearing requires that the particular interest which the claimant seeks to protect be 'property' within the meaning of the due process clauses of the federal and state constitutions. ... To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He [or she] must have more than a unilateral expectation of it. He [or she]

must, instead, have a legitimate claim of entitlement to it.

*In re Robert's Tours & Transp., Inc.,* 104 Hawai'i at 106, 85 P.3d at 631 (holding that an application that sought an expansion of motor-carrier service did not constitute a property interest that implicated the due-process clause) (quotation marks and internal citations omitted). It is well-settled that a liquor license is a privilege, not a right:

No person has an absolute or inherent right to a license to sell intoxicating liquor, the right to sell intoxicating liquor not being one of the privileges or immunities of a citizen of the United States. The issuance of a license to sell intoxicating liquor is a matter, not of right, but purely of legislative grace, and may be extended, limited, or denied without violating any constitutional right. Legislatures may lawfully grant the right to engage in the liquor traffic to a certain class or classes of persons and withhold it from all others, and no person may complain because a liquor legislation has denied him or her the privilege of engaging in the liquor traffic, at least as long as he or she has not been arbitrarily discriminated against.

45 Am.Jur.2d *Intoxicating Liquors* § 114 (2007) (footnotes omitted). As a well-known treatise on municipal law explains,

[t]here is no right to engage in the business of manufacturing, selling, or otherwise dealing in intoxicating liquor in the sense that there is a right to engage in occupations and pursuits intrinsically desirable or innocuous. It is widely, if not universally, recognized that intoxicating liquor businesses of all kinds are potentially if not actually dangerous or harmful to the public health, morality, and welfare, and

---

**34.** We note, for example, the existence of statutes that require individuals to go through multiple procedural steps within an agency in order to obtain government benefits. For example, a state or county employee seeking service-connected-occupational-disability-retirement benefits pursuant to HRS § 88–79 (Supp.2006) must first be examined and then certified by the Employees' Retirement System (ERS) medical board as permanently incapacitated for further performance of duty. A certification by the medical board that an individual is not incapacitated may be appealed to the ERS board of trustees. HRS § 88–82 (1993 & Supp.2006). Similarly, HRS § 386–86 (Supp.2006) requires the Director of the Department of Labor and Industrial Relations (DLIR) to render a decision within sixty days after the conclusion of a hearing awarding or denying a claim for workers' compensation benefits, and HRS § 386–87 (1993) provides that a decision of the DLIR director shall be final unless appealed to the Labor and Industrial Relations Board (LIRAB). HRS § 386–88 (Supp. 2006) provides that LIRAB's decision shall be final and conclusive unless it is reopened by the DLIR director or appealed to the Hawai'i Intermediate Court of Appeals.

that, consequently, they are subject to strict supervision or prohibition by states and also by municipalities authorized to act in the matter. Accordingly, although there are occasional intimations of a contrary view, persons are not entitled as of right to licenses or permits to engage in these businesses. They are at most entitled as a matter of privilege to such a license or permit in accordance with ordinances, statutes, or constitutional provisions.

9A McQuillin, *The Law of Municipal Corporations* § 26:192 at 130–31 (3d ed.2007) (footnotes omitted); *see also Application of Roberts*, 358 F.Supp. 392, 396 (W.D.S.D.1973) ("it is readily apparent that a liquor license in the State of South Dakota is nothing more than a personal privilege to participate in the monopoly granted to the state by the Twenty–First Amendment to the United States Constitution.... Being a privilege, its value necessarily depends upon the circumstances of its use. Standing alone, a liquor license is worthless under the South Dakota statute."); *Cusano v. Dunn*, 137 Conn. 20, 23, 74 A.2d 477, 479 (1950) ("permit to sell intoxicating liquors is a purely personal privilege revocable at the discretion of the commission, does not constitute property, and is not transferable."); *Crazy Horse, Inc. v. Pearce*, 98 Idaho 762, 572 P.2d 865, 868 (1977) ("a liquor license is a privilege and not a property right"); *Bisco's Inc. v. Michigan Liquor Control Comm'n*, 395 Mich. 706, 238 N.W.2d 166, 169 (1976) ("This Court has held that because a liquor license is a privilege, a licensee does not have a property interest in a liquor license and, accordingly, a local legislative body may exercise the powers vested in it by the statute without according the licensee procedural due process."); *Kopper Kettle Restaurants, Inc. v. City of St. Robert*, 439 S.W.2d 1, 4 (Mo.Ct.App.1969) ("[T]he general rule and the rule in Missouri is that, absent a statutory requirement, notice and a hearing are not prerequisites to the exercise of discretionary authority to grant or deny a liquor license."); *C. Schmidt & Sons, Inc. v. New York State Liquor Auth.*, 73 A.D.2d 399, 426 N.Y.S.2d 482 (1980) ("The right to traffic in alcoholic beverages is a privilege."); *Medley v. Maryville City Beer Bd.*, 726 S.W.2d

891, 892 (Tenn.1987) ("There is, in this state, no right to sell beer. It is a privilege extended only by license or permit.").

Additionally, the Hawai'i Supreme Court has stated that

*[i]t is well settled that when a governmental agency has discretion in granting a license, [applicants for a license] do not have a legitimate claim of entitlement [to the license so as to have a property interest requiring due process]. Thornton v. City of St. Helens, 425 F.3d 1158, 1164 (9th Cir.2005) (stating that "a statute that grants the reviewing governmental body unfettered discretion to approve or deny [a state operating license] application does not create a property right"); Allocco Recycling, Ltd. v. Doherty, 378 F.Supp.2d 348, 366 (S.D.N.Y.2005) (concluding that "when an agency has substantial discretion under state or local law to grant or deny a license or permit, the plaintiff has no legitimate claim of entitlement"); Gabris v. New York City Taxi & Limousine Comm'n, 2005 WL 2560384 (S.D.N.Y.2005) (holding that "defendant is vested with broad discretion to grant or deny a license application, which forecloses plaintiff from showing an entitlement to one"). Cf. Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 578, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972) (opining that a non-tenured teacher did not have a property interest or entitlement to re-employment, and therefore could be terminated without due process).*

*Keahole Defense Coalition, Inc. v. Bd. of Land & Natural Res.*, 110 Hawai'i 419, 433–34, 134 P.3d 585, 599 (2006) (emphasis added; brackets omitted).

In *Hyatt Corp. v. Honolulu Liquor Comm'n*, 69 Haw. 238, 738 P.2d 1205 (1987), the Hawai'i Supreme Court recognized the "unusually broad discretionary powers" vested in the four county liquor commissions by the Hawai'i Legislature and the consistency with which "the extent of the grant of power and discretion has pertained ... throughout the history of the Hawaii intoxicating liquor law." *Id.* at 241, 738 P.2d at 1207 (quoting H. Wattel & P. Putnam, *Intoxicating Liquor Laws in Hawaii and the Industry, Leg. Ref.*

*Bureau Rep. No. 2* (the LRB Report) at 31–32 (1969) (brackets omitted)). Indeed, the LRB Report quoted by the supreme court specifically observed as follows:

A county liquor commission in Hawaii is one of the most powerful governmental bodies in the State. Vast plenary powers and virtually unfettered discretions have been assigned to the four county liquor commissions within their sphere of authority and respective geographical jurisdictions.

LRB Report at 77.

The broad discretion vested in the Commission is reflected in various sections of HRS chapter 281. For example, HRS § 281–59(a) provides that a liquor license application "shall be refused" if a majority of those eligible to protest file their protests, but "[o]therwise, the commission may in its discretion grant or refuse the same." *Id.* HRS § 281–59(c) provides that the Commission "may also, with like discretion ... [g]rant a license to one person in preference to another, without reference to any priority in the order of filing of the applications[.]" *Id.*

Since a liquor license is a privilege that the Commission has broad discretion to grant or deny, due process principles do not require that an applicant for a liquor license be afforded a trial-type-contested-case hearing.

#### 4.

Finally, other courts that have considered the issue before us have concluded that the initial grant or denial of a liquor license is not a "contested case" under the Administrative Procedures Act (APA) of their respective states. *See, e.g., Kassab v. Acho,* 150 Mich. App. 104, 388 N.W.2d 263, 265 (1986) (holding that the APA provisions dealing with contested cases do not apply to the initial grant of a liquor license because the applicable statutes and rules did "not require that the selection of a license be preceded by notice and the opportunity for a hearing."); *Prestige Stations, Inc. v. Washington Liquor Control Bd.,* 33 Wash.App. 669, 657 P.2d 322,

325 (1982) (holding that since the definition of a contested case included only an application for reissuance, revocation, suspension, or modification of a license, denial of an initial application for a liquor license was not a contested case subject to judicial review under the APA, although the denial was reviewable pursuant to the judiciary's "inherent supervisory capacity, to determine if the agency's conclusions are as a matter of law arbitrary, capricious or contrary to law."). *Id.* at 325.

#### B. *Whether the Circuit Court Had Jurisdiction to Consider E & J's Appeal*

Pursuant to HRS § 91–14(a),

[a]ny person aggrieved by a final decision and order in a *contested case* or by a preliminary ruling of the nature that deferral of review pending entry of a subsequent final decision would deprive appellant of adequate relief *is entitled to judicial review thereof under this chapter;* but *nothing in this section shall be deemed to prevent resort to other means of review, redress, relief, or trial de novo, including the right of trial by jury, provided by law.*

(Emphases added.) Under the foregoing statute, only a person aggrieved by a final decision and order in a "contested case" can seek judicial review pursuant to HRS § 91–14. However, a person aggrieved by a final decision and order in a non-contested-case hearing is not precluded from seeking other judicial review provided by law. *Bush v. Hawaiian Homes Comm'n,* 76 Hawai'i at 136–37, 870 P.2d at 1280–81.

In light of our conclusion that the Commission was not required to hold a contested-case hearing on E & J's application for a liquor license, we are inclined to conclude, based on the literal language of HRS § 91–14, that E & J was not entitled to seek judicial review pursuant to HRS § 91–14 but instead, was required to "resort to other means of review, redress, relief, or trial de novo, including the right of trial by jury, provided by law."[35] *See* HRS § 91–14(a).

---

**35.** In *Prestige Stations, Inc. v. Washington Liquor Control Bd.,* 33 Wash.App. 669, 657 P.2d 322

(1982), the Washington Court of Appeals held that although judicial review under the Washing-

This conclusion, we believe, is consistent with the statutory framework that governs the operations and procedures of the Commission because, pursuant to HRS chapter 281, judicial review of Commission decisions pursuant to HRS chapter 91 is expressly limited to Commission decisions that affect existing licensees.

For example, HRS § 281–41(h) (Supp. 2006) provides that the Commission "may approve a transfer or refuse to approve a transfer [of a liquor license] and the refusal by the commission to approve a transfer shall be final and conclusive, *unless an appeal is taken as provided in [HRS] chapter 91.*" *Id.* (emphasis added). Additionally, HRS § 281–92 (Supp.2006) provides for appeals by licensees aggrieved by an order assessing or providing for collection of a penalty, or an order suspending or revoking a liquor license:

> Appeals. Any licensee aggrieved by any order assessing or providing for the collection of a penalty, or by any order suspending or revoking any license, *may appeal therefrom in the manner provided in chapter 91 to the circuit court of the circuit in which the liquor commission or liquor control adjudication board making the order has jurisdiction and the judgment of the court shall be subject to review,* subject to chapter 602, in the manner provided for civil appeals from the circuit courts.

*Id.* (emphasis added). No statutory provision exists that authorizes an appeal pursuant to HRS § 91–14 from a denial of a liquor license.

■ We note, however, that in prior cases, the Hawai'i Supreme Court has concluded that a "public hearing" held in accordance with statutory requirements qualified as a "contested case" for purposes of HRS § 91–14 judicial review. In *Mahuiki v. Planning Comm'n,* 65 Haw. 506, 654 P.2d 874 (1982), for example, the supreme court held that a proceeding before the County of Kaua'i Plan-

ning Commission in which an applicant sought permits to develop a parcel of land was a "contested case" from which an appeal could be taken. *Id.* at 514, 654 P.2d at 879. The supreme court therefore held that adjacent landowners who had participated in the hearing before the commission by filing their written testimonies against the proposed development, in conformity with published notices, had standing to invoke judicial review pursuant to HRS § 91–14. *Id.* at 515–16, 654 P.2d at 880. The supreme court noted that "a public hearing, conducted pursuant to public notice, has been deemed a 'contested case' within the meaning of HRS § 91–1." *Id.* at 515, 654 P.2d at 880 (internal quotation marks omitted) (citing *In re Application of Hawaiian Elec. Co.,* 56 Haw. 260, 264, 535 P.2d 1102, 1105 (1975); *East Diamond Head Ass'n v. Zoning Bd. of Appeals,* 52 Haw. 518, 524, 479 P.2d 796, 799 (1971)).

More recently, in *Singleton v. Liquor Comm'n, County of Hawai'i,* 111 Hawai'i 234, 241–42, 140 P.3d 1014, 1021 (2006), the Hawai'i Supreme Court considered an appeal challenging the *grant* of a liquor license by the Hawai'i County Liquor Commission (the Hawai'i Commission) following a public hearing similar to that conducted by the Commission in this case. In affirming the circuit court's judgment affirming the Hawai'i Commission's approval of an application for a liquor license, the supreme court concluded, in part, as follows:

> Generally, pursuant to HRS § 281–17 (Supp.2005), [the Hawai'i Commission's] decisions are final *subject to judicial review under HRS chapter 91. See HRS § 91–14(g) (1993).* On appeal this court determines whether the circuit court's decision on review of the agency decision was right or wrong.
>
> > Review of a decision made by the circuit court upon its review of an agency's decision is a secondary appeal. The standard of review is one in which *this*

---

ton APA was not available for denial of an initial application for a liquor license since such a proceeding was not a contested case, judicial review was available under the court's "inherent power of review" for "administrative action that is arbitrary, capricious or contrary to law since the fundamental right referred to is simply the right

to be free from such action." *Id.* at 324. The supreme court therefore reversed the superior court's order dismissing the case for lack of jurisdiction and remanded the case "for further proceedings under the court's inherent power of review[.]" *Id.* at 327.

*court must determine whether the circuit court was right or wrong in its decision, applying the standards set forth in HRS § 91–14(g) to the agency's decision.*

Sierra Club v. Office of Planning, 109 Hawai'i 411, 414, 126 P.3d 1098, 1101 (2006) (citations omitted) (emphasis added). "Under the right/wrong standard, we examine the facts and answer the question without being required to give any weight to the trial court's answer to it." *Teller v. Teller*, 99 Hawai'i 101, 107, 53 P.3d 240, 246 (2002) (internal quotation marks and citations omitted).

"Under HRS § 91–14(g), conclusions of law are reviewable under subsections (1), (2), and (4); questions regarding procedural defects under subsection (3); findings of fact under subsection (5); and an agency's exercise of discretion under subsection (6)." *Sierra Club*, 109 Hawai'i at 414, 126 P.3d at 1101 (quoting *In re Hawaiian Elec. Co.*, 81 Hawai'i 459, 465, 918 P.2d 561, 567 (1996)). In addition, an agency's conclusions of law are reviewed de novo under the right or wrong standard. *Loui v. Bd. of Med. Exam'rs*, 78 Hawai'i 21, 25, 889 P.2d 705, 709 (1995).

Singleton v. Liquor Comm'n, County of Hawai'i, 111 Hawai'i at 241–42, 140 P.3d at 1021–22 (emphases added; footnotes and brackets omitted).

In light of *Singleton, Mahuiki*, and prior supreme court precedent, we conclude that an applicant who is denied a liquor license following a "public hearing" held in compliance with HRS chapter 281 is entitled to seek judicial review pursuant to HRS § 91–14.

The dissent construes the supreme court's *Singleton* decision as an implicit determination that a contested-case hearing was required to be held by the Hawai'i Commission in deciding a liquor license application. Otherwise, the dissent states, "[T]here does not appear to be any basis for the supreme court to have assumed jurisdiction in *Singleton* besides judicial review of a contested case authorized under HRS § 91–14(a)." Dissenting opinion at 558, 174 P.3d at 397. However, the hearing held by the Hawai'i Commission in *Singleton* procedurally mirrored the public hearing held in this case,[36] and the issue of whether the Hawai'i Commission was required to conduct a contested-case proceeding does not appear to have been raised.

Although the Hawai'i Commission followed procedures which appear to be the same as those used by the Commission in this case, the Hawai'i Supreme Court did not suggest that the procedures were deficient because they failed to comply with the contested-case procedures set forth in HRS chapter 91. Rather, the supreme court focused its review on the Commission's compliance with the requirements of chapter 281. Thus, *Singleton* leads us to conclude that although courts have jurisdiction under HRS § 91–14 to review denials of liquor licenses, the proceedings before the county liquor commissions are governed by HRS chapter 281, rather than the procedural requirements of HRS chapter 91.

The legislative history of HRS chapter 91 cited by the dissent, Hse. Stand. Comm. Rep. No. 8, in 1961 House Journal, at 653–61, is consistent with this interpretation. The House Judiciary Committee report cited by the dissent indicates that the legislature wanted to provide for judicial review of liquor license applications. *Id.* at 656. However, there is nothing to indicate that the legislature intended to require the use of chapter 91 contested-case procedures, rather

---

**36.** The facts laid out in *Singleton* indicate that "[o]n July 3, 2003, the public hearing on the application [for liquor license] was held at [the Hawai'i Commission's] conference room in Hilo[.] 111 Hawai'i at 238, 140 P.3d at 1018. "Appellant was provided the opportunity to participate at multiple points in the licensing process. General notices of the meetings were published in local newspapers[.]" *Id.* at 252, 140 P.3d at 1032. "Appellant was given the opportunity to be heard at the public hearings. During the process, Appellant and other residents of the Kona Plaza Condominium were permitted to present written and oral testimony." *Id.* at 252, 140 P.3d at 1032. The Appellant in *Singleton* alleged that the grant of the liquor license had deprived him of property without due process of law; the supreme court rejected that argument, noting that "Appellee provided Appellant with 'notice' and the 'opportunity to be heard.'" *Id.* at 252, 140 P.3d at 1032.

than the procedures set forth in chapter 281, when liquor commissions considered such applications.

## CONCLUSION

In summary, we conclude that the Commission was not required to hold a "contested case" hearing pursuant to HRS chapter 91, in addition to the "public hearing" conducted on E & J's application for a liquor license in accordance with HRS chapter 281. Therefore, the Commission was not required to comply with HRS § 91–11 in issuing its decision on E & J's application. Pursuant to *Singleton* and other supreme court cases, however, E & J was entitled to seek judicial review of the Commission's decision denying E & J's application for a liquor license, in accordance with HRS § 91–14.

Accordingly, we: (1) vacate (a) the Findings of Fact, Conclusions of Law, and Decision and Order entered by the circuit court on April 20, 2006, and (b) the Judgment entered by the circuit court on the same day; and (2) remand this case to the circuit court to determine E & J's appeal on the merits. On remand and relevant to vacated Conclusions of Law Nos. 11, 12, and 13, the circuit court is instructed to determine whether the Commission's failure to verify whether proper notice of the public hearing had been sent to neighboring property owners and lessees was harmless, given the Commission's ultimate denial of E & J's application.

### Dissenting Opinion by NAKAMURA, J.

The majority concludes that: (1) in accordance with Hawaii Revised Statutes (HRS) § 91–14 (1993 & Supp.2006), E & J Lounge Operating Company, Inc. (E & J) was entitled to seek judicial review of the decision of the Liquor Commission of the City and County of Honolulu (Honolulu Liquor Commission) to deny E & J's application for a

liquor license, but (2) the Honolulu Liquor Commission was not required to hold a "contested case" hearing, pursuant to HRS Chapter 91, on E & J's application for a liquor license.[1] The latter conclusion leads the majority to hold that the Honolulu Liquor Commission was not required to comply with the procedures for "contested cases" set forth in HRS Chapter 91 in deciding E & J's liquor license application. On this basis, the majority vacates the Judgment of the Circuit Court of the First Circuit (First Circuit Court).

The majority provides cogent reasons why it may be impractical to apply the procedural requirements for "contested cases" set forth in HRS Chapter 91 to hearings held by the Honolulu Liquor Commission in deciding whether to grant or deny liquor licenses. However, I cannot square the majority's conclusion that the Honolulu Liquor Commission was not required to hold a "contested case" hearing on E & J's application for a liquor license with the Hawai'i Supreme Court's decision in *Singleton v. Liquor Comm'n, County of Hawai'i*, 111 Hawai'i 234, 140 P.3d 1014 (2006). I read *Singleton* as implicitly holding that the hearing under HRS § 281–59 (Supp.2006), which is held by county liquor commissions in ruling on a liquor license application, is a "contested case" hearing.[2] I also cannot reconcile the majority's conclusion that no "contested case" hearing was required on E & J's liquor license application with the legislative history of HRS Chapter 91, which indicates that the definition of "contested case" was intended to include the denial of a liquor license application. Accordingly, I respectfully dissent.

### I.

HRS Chapter 281, entitled "Intoxicating Liquor," establishes the jurisdiction and powers of county liquor commissions. HRS

---

1. The parties to this case on appeal are: 1) Appellee–Appellant/Cross–Appellee Liquor Commission of the City and County of Honolulu; 2) Appellant–Appellee/Cross–Appellee E & J Lounge Operating Company, Inc.; and 3) Intervenor–Appellees/Intervenor–Cross–Appellants H. James Stahl, Tyson J. Thomas, Randi Thomas, Emily Reed, and Bill Maxwell (collectively, the "Intervenors").

2. Hawaii Revised Statutes (HRS) § 91–1 (1993) defines "contested case" as "a proceeding in which the legal rights, duties, or privileges of specific parties are required by law to be determined after an opportunity for agency hearing."

§ 281–17 (Supp.2006) vests a liquor commission, within its own county, with broad power, authority, and discretion to, among other things, "grant, refuse, suspend, and revoke any licenses for the manufacture, importation, and sale of liquors." HRS § 281–17(a)(1). With respect to judicial review of liquor commission actions, HRS § 281–17(b) provides:

> The exercise by the commission ... of the power, authority, and discretion vested in it pursuant to this chapter *shall be final and shall not be reviewable by or appealable to any court or tribunal, except as otherwise provided in this chapter or chapter 91.*

(Emphasis added.) HRS Chapter 281 does not provide for judicial review of a decision by a liquor commission to grant or deny an application for a liquor license. Thus, such a decision would only be subject to judicial review if "provided in ... [HRS] [C]hapter 91."

In *Singleton,* the Hawai'i Supreme Court considered a secondary appeal challenging the grant of a liquor license by the Liquor Commission of the County of Hawai'i (Hawai'i County Liquor Commission) after a public hearing held pursuant to HRS § 281–59—the same type of hearing held by the Honolulu Liquor Commission in denying E & J's application for a liquor license. *Singleton,* 111 Hawai'i at 236–38, 140 P.3d at 1016–18.[3] The case was before the Hawai'i Supreme Court on appeal of the final judgment of the Circuit Court of the Third Circuit (Third Circuit Court) affirming the Hawai'i County Liquor Commission's decision. The supreme court stated:

> Generally, pursuant to HRS § 281–17 (Supp.2005),[12] [Hawai'i County Liquor Commission's] decisions are final subject to judicial review under HRS chapter 91. *See* HRS § 91–14(g) (1993).[13] On appeal this court determines whether the circuit court's decision on review of the agency decision was right or wrong.

12. HRS § 281–17, entitled "Jurisdiction and powers," states in relevant part:

> (a) The liquor commission, within its own county, shall have the *sole jurisdiction, power, authority, and discretion,* subject only to this chapter:
>
> (1) *To grant, refuse, suspend and revoke any licenses* for the manufacture, importation, and sale of liquors;
>
> . . . .
>
> (4) From time to time to *make, amend, and repeal such rules, not inconsistent with this chapter,* as in the judgment of the commission seem appropriate for carrying out this chapter and for the efficient administration thereof, and the proper conduct of the business of all licensees, including every matter or thing required to be done or which may be done with the approval or consent or by order or under the direction or supervision of or as prescribed by the commission; which rules, *when adopted as provided in chapter 91 shall have the force and effect of law;*
>
> . . . .
>
> *The exercise by. the commission or board of the power, authority, and discretion vested in it pursuant to this chapter shall be final and shall not be reviewable by or appealable to any court or tribunal, except as otherwise provided in this chapter or chapter 91.*

(Emphases added.)

13. HRS § 91–14,· entitled "Judicial review of contested cases," states in relevant part:

> (a) Any person aggrieved by a final decision and order in a contested case or by a preliminary ruling of the nature that deferral of review pending entry of a subsequent final decision would deprive appellant of adequate relief is entitled to judicial review thereof under this chapter[.] ...
>
> . . . .

---

**3.** The appellant in *Singleton v. Liquor Comm'n, County of Hawai'i,* 111 Hawai'i 234, 140 P.3d 1014 (2006), was an individual who opposed the application for the liquor license and apparently lived near the premises for which the liquor license was sought. *Id.* at 239–41, 140 P.3d at 1019–21.

(g) Upon review of the record the court may affirm the decision of the agency or remand the case with instructions for further proceedings; or it may reverse or modify the decision and order if the substantial rights of the petitioners may have been prejudiced because the administrative findings, conclusions, decisions, or orders are:

(1) In violation of constitutional or statutory provisions; or

(2) In excess of the statutory authority or jurisdiction of the agency; or

(3) Made upon unlawful procedure; or

(4) Affected by other error of law; or

(5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or

(6) Arbitrary, or capricious, or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

*Id.* at 241, 140 P.3d at 1021. The supreme court assumed jurisdiction over the appeal and applied the standards set forth in HRS § 91–14(g) in determining whether the Third Circuit Court's review of the decision of the Hawai'i County Liquor Commission had been proper. *Id.* at 241–42, 140 P.3d at 1021–22.

The only statutory provisions referred to by the supreme court in support of its assumption of jurisdiction over in the appeal in *Singleton* were HRS § 91–14(a) (quoted in part in footnote 13 of the supreme court's opinion) and HRS § 91–14(g) (cited in the text and quoted in footnote 13). *Id.* at 241, 140 P.3d at 1021. HRS § 91–14 is entitled "Judicial review of contested cases" and HRS § 91–14(a) provides that "[a]ny person aggrieved by a final decision and order in a *contested case* . . . is entitled to judicial review thereof under this chapter[.]" (Emphasis added.) HRS § 91–14(g) sets forth the grounds and standards for judicial review of an agency's decision in a contested case.

The portions of HRS § 91–14 quoted by the supreme court provide for judicial review of contested cases. Thus, the supreme court, in assuming jurisdiction over the appeal in *Singleton*, must have determined that the hearing held under HRS § 281–59 by the Hawai'i County Liquor Commission in deciding the liquor license application at issue in *Singleton* was a "contested case" hearing. Indeed, there does not appear to be any basis for the supreme court to have assumed jurisdiction in *Singleton* besides judicial review of a contested case authorized under HRS § 91–14(a). Based on *Singleton*, the HRS § 281–59 hearing held by the Honolulu Liquor Commission on E & J's application for a liquor license was a "contested case" hearing, and the Honolulu Liquor Commission was required to comply with the "contested case" procedures set forth in HRS Chapter 91 in rendering its decision.

Neither the Honolulu Liquor Commission nor the *pro se* Intervenors suggest a way around *Singleton's* implied holding that the HRS § 281–59 hearing held by a liquor commission in ruling on a liquor license application is a "contested case" hearing. The Honolulu Liquor Commission avoids addressing the implied holding in *Singleton* by stating that it is not challenging a party's ability to appeal the denial or granting of a liquor license on the grounds provided under HRS § 91–14(g). The Honolulu Liquor Commission does not, however, explain how judicial review of the decision regarding an application for a liquor license is possible if the hearing under § 281–59 does not qualify as a "contested case" hearing. The *pro se* Intervenors address the implied holding of *Singleton* head on but fail to offer a viable solution. The Intervenors argue that because the Hawai'i Supreme Court did not fully consider the contested case issue in *Singleton*, this court should "ignore that the Hawai'i Supreme Court ruled that it had jurisdiction in the *Singleton* case."

II.

The legislative history of HRS Chapter 91 supports the conclusion that the hearing held by the Honolulu Liquor Commission in denying E & J's application was a "contested case" hearing. In 1961, House Bill No. 5 was introduced and was eventually enacted into law as Act 103, 1961 Haw. Sess. Laws 85, and codified as HRS Chapter 91. The House Judiciary Committee issued Standing Committee Report No. 8 on House Bill No. 5 (hereinafter, the "House Committee Re-

port"). Hse. Stand. Com. Rep. No. 8, in 1961 House Journal, at 653–61.

In discussing the definition of "contested case" contained in House Bill No. 5, House Draft 1, the House Committee Report addressed a question from the Honolulu Liquor Commission regarding whether the denial of a liquor license application came under the definition of a "contested case." *Id.* at 656. The House Committee Report stated that the Judiciary Committee intends the definition of a "contested case" to include the denial of a liquor license application. *Id.* The relevant portion of the House Committee Report is as follows:

> The Liquor Commission of the City and County of Honolulu raised the question whether denial of a liquor license application came under [the definition of "contested case"]. A summary submitted by the liquor commission indicates that there is judicial review in 27 states and no judicial review in 21 states although it has been urged by the liquor commission to exclude matters of liquor license application from under the definition of a "contested case". *There has been no real showing why the liquor license application should be excluded and your Committee intends said definition to include the denial of said liquor license application.*

*Id.* (emphasis added). The definition of "contested case" contained in House Bill No. 5, House Draft 1, that was discussed in the House Committee Report is the same as the definition of "contested case" under current law, HRS 91–1 (1993).

### III.

In light of *Singleton* and the legislative history of HRS Chapter 91, I conclude that the hearing held by the Honolulu Liquor Commission before it denied E & J's application for a liquor license was a "contested case" hearing. Therefore, the Honolulu Liquor Commission was required to comply with the "contested case" procedures set forth in HRS Chapter 91 in deciding E & J's application. I would affirm the First Circuit Court's Judgment.[4]

---

4. The Circuit Court of the First Circuit (First Circuit Court) entered a Judgment "consistent with the [First Circuit Court's] Findings of Fact, Conclusions of Law[,] and Decision and Order." I construe the First Circuit Court's Decision and Order to mean that the First Circuit Court "vacated" rather than "reversed" the decision of the Liquor Commission of the City and County of Honolulu (Honolulu Liquor Commission), and I conclude that the First Circuit Court intended to refer to "HRS § 281–57" rather than "HRS § 291–57" in paragraph number 2 of the Decision and Order. I do not decide whether Conclusion of Law No. 9 is correct because it was not necessary to the First Circuit Court's Decision and Order. Subject to these qualifications, I would affirm the First Circuit Court's Judgment.